**No. 23-5129**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALPINE SECURITIES CORPORATION,

*Plaintiff-Appellant,*

*v.*

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

*Defendant-Appellee,*

UNITED STATES OF AMERICA,

*Intervenor Defendant-Appellee.*

On Appeal From The United States District Court For The District Of Columbia
Case No. 1:23-cv-01506-BAH, District Judge Beryl A. Howell

**PETITION FOR REHEARING EN BANC**

Amir C. Tayrani
Alex Gesch
Max E. Schulman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 887-3692
ATayrani@gibsondunn.com

*Attorneys for Defendant-Appellee*
*Financial Industry Regulatory*
*Authority, Inc.*

July 19, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

RULE 35(b) STATEMENT AND INTRODUCTION............................................1

BACKGROUND ........................................................................................4

REASONS FOR GRANTING REHEARING EN BANC ......................................7

    I.      THE INJUNCTION ORDER CONFLICTS WITH
           PRECEDENT FROM THE SUPREME COURT, THIS
           COURT, AND OTHER COURTS OF APPEALS. .............................7

           A.     FINRA Is A Private Entity Not Subject To Constitutional
                   Claims. ..........................................................................8

           B.     There Is No Private Nondelegation Violation. .........................14

    II.     THIS CASE INVOLVES EXCEPTIONALLY IMPORTANT
           CONSTITUTIONAL QUESTIONS WITH FAR-REACHING
           PRACTICAL CONSEQUENCES. ...................................................16

CONCLUSION ........................................................................................18

**ADDENDUM**

Exhibit 1:  Panel Order

Exhibit 2:  Corporate Disclosure Statement

Exhibit 3:  Certificate As To Parties

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aslin v. FINRA*,
    704 F.3d 475 (7th Cir. 2013) ...............................................................15

*Ass'n of Am. R.Rs. v. DOT (Amtrak I)*,
    721 F.3d 666 (D.C. Cir. 2013)....................................................3, 9, 15

*Ass'n of Am. R.Rs. v. DOT (Amtrak III)*,
    821 F.3d 19 (D.C. Cir. 2016)..........................................................2, 9

*Bernstein v. Lind-Waldock & Co.*,
    738 F.2d 179 (7th Cir. 1984) .................................................................4

*Currin v. Wallace*,
    306 U.S. 1 (1939)......................................................................3, 14

*D.L. Cromwell Investments, Inc. v. NASD Regul., Inc.*,
    279 F.3d 155 (2d Cir. 2002) ...............................................................13

*Desiderio v. NASD, Inc.*,
    191 F.3d 198 (2d Cir. 1999) ...........................................................2, 12

*DOT v. Ass'n of Am. R.Rs. (Amtrak II)*,
    575 U.S. 43 (2015)............................................................................11

*Duffield v. Robertson Stephens & Co.*,
    144 F.3d 1182 (9th Cir. 1998) .......................................................2, 12

*Epstein v. SEC*,
    416 F. App'x 142 (3d Cir. 2010) .......................................................13

*First Jersey Sec., Inc. v. Bergen*,
    605 F.2d 690 (3d Cir. 1979) ...............................................................12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010)......................................................................8, 11

ii

*Herron v. Fannie Mae*,
  861 F.3d 160 (D.C. Cir. 2017)............................................................12

*Jones v. SEC*,
  115 F.3d 1173 (4th Cir. 1997) ............................................................12

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995)...................................................................10, 12

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018)...............................................................2, 8, 11

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
  53 F.4th 869 (5th Cir. 2022) .........................................................15, 16

*Oklahoma v. United States*,
  62 F.4th 221 (6th Cir. 2023) ..........................................................3, 15

*NB ex rel. Peacock v. District of Columbia*,
  794 F.3d 31 (D.C. Cir. 2015) ............................................................13

*Pub. Invs. Arb. Bar Ass'n v. SEC*,
  771 F.3d 1 (D.C. Cir. 2014) .............................................................10

*Riley v. St. Luke's Episcopal Hosp.*,
  252 F.3d 749 (5th Cir. 2001) (en banc) ..............................................10

*Saad v. SEC (Saad II)*,
  873 F.3d 297 (D.C. Cir. 2017).............................................................4

*Saad v. SEC (Saad III)*,
  980 F.3d 103 (D.C. Cir. 2020)...........................................................1, 4

*United States ex rel. Stone v. Rockwell Int'l Corp.*,
  282 F.3d 787 (10th Cir. 2002) ...........................................................10

*Sunshine Anthracite Coal Co. v. Adkins*,
  310 U.S. 381 (1940).....................................................................3, 14

*Turbeville v. FINRA*,
  874 F.3d 1268 (11th Cir. 2017) ...........................................................4

*United States v. Rock Royal Co-op.*,
   307 U.S. 533 (1939)............................................................................14

*United States v. Solomon*,
   509 F.2d 863 (2d Cir. 1975) .............................................................17

*Winter v. Natural Res. Def. Council*,
   555 U.S. 7 (2008)............................................................................2, 7

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ....................................................................8

**Statutes**

15 U.S.C. §78o-3(b)(6) ............................................................................16

15 U.S.C. § 78s(b)(1) ...............................................................................15

15 U.S.C. § 78s(c)......................................................................................15

15 U.S.C. § 78s(d)(1) ...............................................................................15

15 U.S.C. § 78s(d)(2) ...............................................................................15

15 U.S.C. § 78s(g)(1)(A) .........................................................................17

15 U.S.C. § 78s(g)(1)(B) .........................................................................17

15 U.S.C. § 78s(g)(1)(C).........................................................................17

**Rules**

FINRA Rule 9311(b) .................................................................................5

**Other Authorities**

Jennifer L. Mascott, *Who Are 'Officers of the United States'?*
   70 Stan. L. Rev. 443 (2018)..................................................................8

Order Approving Proposed Rule Change To Amend The By-Laws Of NASD,
   72 Fed. Reg. 42,169 (Aug. 1, 2007) ...................................................5

S. Rep. No. 94-75 (1975) ...........................................................................4

SEC, *Concept Release Regarding Self-Regulation*, Securities Exchange Act
    Release No. 50700, 69 Fed. Reg. 71,256 (Dec. 8, 2004) ....................................4

## RULE 35(B) STATEMENT AND INTRODUCTION

This Petition addresses the critically important question whether a motions panel contravened controlling precedent when it concluded that Alpine Securities Corporation ("Alpine") is likely to succeed in establishing that the structure of the Financial Industry Regulatory Authority, Inc. ("FINRA")—"a private self-regulatory organization that oversees the securities industry," *Saad v. SEC (Saad III)*, 980 F.3d 103, 104 (D.C. Cir. 2020)—is unconstitutional and that FINRA's ongoing disciplinary proceeding against Alpine should therefore be enjoined. *See* Injunction Order at 1-2. Alpine's request for an injunction pending appeal was premised on legal theories that—prior to the Injunction Order—had been rejected by *every* court to address them. As a private entity, FINRA is not a state actor subject to the Constitution's appointments and removal requirements, nor is FINRA's performance of delegated regulatory responsibilities under comprehensive SEC oversight a private nondelegation doctrine violation.

This Court should grant rehearing en banc to maintain the uniformity of its decisions, eliminate conflicts with the precedent of the Supreme Court and multiple other courts of appeals, and forestall the potentially profound harm that the Injunction Order could inflict on FINRA, other self-regulatory organizations, and the millions of market participants who depend on FINRA to protect investors and safeguard market integrity.

In seeking to enjoin FINRA's ongoing disciplinary proceeding, Alpine—a broker-dealer with a recidivist disciplinary history that has violated FINRA's rules thousands of times over the past year—asked the motions panel to depart from decisions of the Supreme Court and this Court recognizing that the Constitution's appointments and removal requirements apply only to agencies and instrumentalities of the United States, not to a *private* party—such as FINRA, *see* Injunction Order at 6 (Walker, J., concurring)—carrying out delegated regulatory responsibilities. *E.g.*, *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018); *Ass'n of Am. R.Rs. v. DOT (Amtrak III)*, 821 F.3d 19, 36 (D.C. Cir. 2016). Alpine's position is also contrary to the decisions of every court of appeals to address the issue—all of which have concluded that FINRA (and its predecessor the National Association of Securities Dealers ("NASD")) is not a state actor subject to constitutional requirements because it was not created by the government, is not controlled by the government, and is not funded by the government. *E.g.*, *Desiderio v. NASD, Inc.*, 191 F.3d 198, 206-07 (2d Cir. 1999); *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1200-02 (9th Cir. 1998), *overruled on other grounds by EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003). The Injunction Order nevertheless broke with precedent and found that Alpine is likely to succeed on the merits. *See* Injunction Order at 1-2 (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)).

Nor can the Injunction Order be sustained based on Alpine's alternative private nondelegation doctrine argument because that would conflict with Supreme Court precedent establishing that Congress may permissibly afford a private entity a role in a regulatory program provided that it "function[s] subordinately" to, and is under the "authority and surveillance" of, a governmental body—as is indisputably the case with FINRA. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940); *see also Currin v. Wallace*, 306 U.S. 1, 14-16 (1939). A ruling that FINRA violates the private nondelegation doctrine would also directly conflict with the "uniform[ ]" body of precedent holding that the SEC-FINRA model does not represent an unconstitutional delegation of authority in light of "the SEC's ultimate control over [FINRA's] rules and their enforcement." *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023); *see also Ass'n of Am. R.Rs. v. DOT (Amtrak I)*, 721 F.3d 666, 672 n.5 (D.C. Cir. 2013) (endorsing courts of appeals decisions applying that reasoning), *vacated and remanded on other grounds*, 575 U.S. 43 (2015).

Finally, rehearing en banc is warranted because the Injunction Order portends a seismic jurisprudential shift in the permissible federal regulatory role of private parties, which could severely impair the ability of FINRA and dozens of other self-regulatory organizations—in both the securities industry and beyond—to discharge their congressionally delegated regulatory responsibilities, as they have done

3

successfully for decades. *See* S. Rep. No. 94-75, at 23 (1975) (the "self-regulatory roles of the exchanges and the NASD have been major elements of the [federal] regulatory scheme . . . since 1934 and 1938" and "should be preserved and strengthened").

The Injunction Order should be vacated, and FINRA should be permitted to continue with its critical enforcement activities.

## BACKGROUND

1. When Congress enacted the Securities Exchange Act of 1934 ("Exchange Act"), it retained the private self-regulation of the securities industry that "preexisted federal regulation" and dates back to the eighteenth century. *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 186 (7th Cir. 1984); *see* SEC, *Concept Release Regarding Self-Regulation*, Securities Exchange Act Release No. 50700, 69 Fed. Reg. 71,256, 71,257 (Dec. 8, 2004). Under the Exchange Act, private entities called self-regulatory organizations exercise a supervisory role over securities markets and, in turn, are subject to comprehensive oversight by the SEC. *See Saad v. SEC (Saad II)*, 873 F.3d 297, 299-300 (D.C. Cir. 2017).

One of those self-regulatory organizations is FINRA, a not-for-profit Delaware corporation that supervises compliance with the securities laws by its broker-dealer members. *See Turbeville v. FINRA*, 874 F.3d 1268, 1270 & n.2 (11th Cir. 2017). FINRA is a private corporation. *See Saad III*, 980 F.3d at 104. It was

4

formed in 2007, when its predecessor, the NASD (formed in 1939), consolidated its regulation and enforcement functions with the similar functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change To Amend The By-Laws Of NASD, 72 Fed. Reg. 42,169 (Aug. 1, 2007). Alpine concedes that the government does not appoint any FINRA board members, officers, or employees. *See* App.58 ¶ 58. Nor does FINRA receive any government funding; it is funded by member fees. *See* App.56 ¶¶ 51-52.

2. Alpine is a broker-dealer member of FINRA, App.51 ¶ 29, and has been disciplined multiple times by FINRA and the SEC. In 2022, a FINRA hearing panel found that Alpine engaged in "intentional and egregious" misconduct, including stealing and misusing customer funds and charging unreasonable fees. Dist. Ct. D.E. 70-1, at 78, 80, 82. Based on that pervasive misconduct and a "high[ ] likel[ihood]" of future violations, the FINRA panel found that "expulsion is an appropriate sanction and the only alternative for protecting the investing public." *Id.* at 78. It also imposed a permanent cease-and-desist order to prevent further public harm. *Id.* at 84-85.

Although the FINRA panel's expulsion order is stayed under FINRA's rules pending Alpine's administrative appeal, the cease-and-desist order is currently in force and binding on Alpine. *See* FINRA Rule 9311(b). After additional customer complaints following the 2022 hearing panel decision prompted a months-long

5

FINRA investigation, FINRA's Department of Enforcement uncovered evidence that Alpine has violated the cease-and-desist order more than 35,000 times (and is continuing to do so on a daily basis) by charging customers millions of dollars in unreasonable, unfair, and unlawful fees.  The Department of Enforcement therefore initiated an expedited proceeding in April 2023 to expel Alpine from FINRA, halt Alpine's ongoing misconduct, and obtain restitution for Alpine's customers.  *See* Dist. Ct. D.E. 70-2.

3.  Months earlier, Alpine and an affiliated company had filed this litigation seeking a declaration that "FINRA is presently constituted and operating in a manner that violates the Constitution" and an order enjoining FINRA from "continuing its unlawful and unconstitutional operation."  App.85-86, Prayer for Relief.  After FINRA commenced the expedited proceeding, Alpine moved for a preliminary injunction.  The district court denied the motion, ruling that Alpine's arguments "fall far short of amounting to likely sustainable constitutional challenges."  App.26.

Alpine then moved this Court for an injunction pending its interlocutory appeal.  Its motion asked the Court to enjoin the ongoing expedited proceeding based on Alpine's claims that, if FINRA is a state actor, FINRA's structure contravenes (1) the President's constitutional powers to remove federal officers and (2) the Appointments Clause; and "[a]lternatively," if FINRA is "not a state actor," FINRA's structure violates (3) the private nondelegation doctrine.  Mot. 6.

6

A divided motions panel granted Alpine's motion—over the opposition of both FINRA and the United States—concluding that Alpine had made the "stringent" showing necessary under *Winter*, 555 U.S. at 20, which requires, among other things, establishing a likelihood of success on the merits. Injunction Order at 1-2. The Injunction Order bars FINRA from moving forward with its expedited proceeding during the pendency of this appeal. *Id.* at 1. Judge Walker wrote a concurrence expressing his view that an injunction was justified because Alpine had raised "serious" arguments under the Constitution's appointments and removal requirements. *Id.* at 4. In Judge Walker's view, although FINRA is a "private corporation[ ]," "*[a]nyone* who wields significant executive power"—whether an employee of a private company or a public agency—"must be an Officer of the United States" subject to the Constitution's appointments and removal requirements. *Id.* at 3, 4 (emphasis added; internal quotation marks and alteration omitted). Judge Garcia dissented without opinion. *Id.* at 1 n.**.

## REASONS FOR GRANTING REHEARING EN BANC

## I.  THE INJUNCTION ORDER CONFLICTS WITH PRECEDENT FROM THE SUPREME COURT, THIS COURT, AND OTHER COURTS OF APPEALS.

Alpine advanced two alternative grounds for an injunction pending appeal—(1) the Constitution's appointments and removal requirements, and (2) the private nondelegation doctrine. Mot. 6. Neither withstands scrutiny.

**A.     FINRA Is A Private Entity Not Subject To Constitutional Claims.**

FINRA and its hearing officers are not subject to the Appointments Clause or the Constitution's removal requirements because those constitutional strictures apply only to public officials—not to the private employees of a private company, such as FINRA.

The Appointments Clause applies to "Officers of the United States" holding offices "established by Law." U.S. Const. art. II, § 2, cl. 2. And the removal power is similarly limited to "executive officers," whom the President is "empower[ed] . . . to keep . . . accountabl[e] by removing them from office." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010). Those constitutional requirements are categorically inapplicable to private parties. *See Lucia*, 138 S. Ct. at 2049 ("The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' *a class of government officials*") (emphasis added); *see id.* at 2056 (Thomas, J., concurring) ("To the Founders, this term [Officers of the United States] encompassed all *federal civil officials* with responsibility for an ongoing statutory duty.") (emphasis added; internal quotation marks omitted) (citing Jennifer L. Mascott, *Who Are 'Officers of the United States'?* 70 Stan. L. Rev. 443, 564 (2018)); Mascott, *supra*, at 471 ("[E]vidence suggests that 'of the United States' in the Appointments Clause, as in

8

several other constitutional provisions, is a descriptive phrase indicating that the officers are federal, and *not state or private*, actors.") (emphasis added).

This Court's decision in *Amtrak III* makes clear the inapplicability of constitutional appointments and removal requirements to private actors. There, the Court considered the constitutionality of a Surface Transportation Board-appointed arbitrator empowered to resolve disputes between two governmental bodies responsible for drafting regulations. 821 F.3d at 36. The statutory provision did not include "any mention whether the appointed arbitrator is a private individual or public official." *Id.* The court explained that, either way, the arbitrator provision was unconstitutional—but the source of the constitutional violation depended on the arbitrator's public or private status. If the arbitrator was a private individual, then the provision was unconstitutional under this Court's decision in *Amtrak I*, which "detailed extensively why private entities cannot wield the coercive power of government" under the private nondelegation doctrine. *Id.* (citing *Amtrak I*, 721 F.3d at 670-74). On the other hand, "assuming" that the arbitrator is "a 'governmental arbitrator' rather than a private one," "the appointment is nonetheless unconstitutional" under the Appointments Clause. *Id.* at 37; *see also id.* at 37-39

(analyzing the Appointments Clause violation triggered by a government arbitrator).\*

Applying the Constitution's appointments and removal requirements to FINRA hearing officers—as Alpine urged in seeking an injunction and Judge Walker suggested in his concurring opinion—is fundamentally incompatible with these controlling precedents because FINRA is "a private organization." *Pub. Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 2 (D.C. Cir. 2014). Alpine did not even allege in its motion that FINRA meets the stringent requirements for treating a nominally private entity as the "Government itself." *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 378 (1995) (holding that Amtrak—although nominally private—was the government because it was federally created and controlled by a federally appointed board). Indeed, Alpine has conceded that FINRA does not possess any of the unusual characteristics that prompted the Supreme Court to conclude in *Lebron* that Amtrak was a governmental body: FINRA was not created by the government, *see* App.52-54 ¶¶ 34-40; its board of directors was not appointed by the government, *see* App.58 ¶ 58; and FINRA is not funded by the government, *see* App.56 ¶¶ 51-52.

---

\* Several other circuits have endorsed this understanding of "Officers of the United States." *See*, *e.g.*, *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 757-58 (5th Cir. 2001) (en banc) ("Supreme Court precedent has established that the constitutional definition of an 'officer' encompasses, at a minimum, a continuing and formalized relationship of employment *with the United States Government*.") (emphasis added); *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 805 (10th Cir. 2002) (similar).

10

The Constitution's appointments and removal requirements are therefore categorically inapplicable to FINRA (a private company) and its hearing officers (private employees). *See DOT v. Ass'n of Am. R.Rs. (Amtrak II)*, 575 U.S. 43, 53-54 (2015) (applying *Lebron* to conclude that Amtrak's "exercise of governmental power must be consistent with the design and requirements of the Constitution, including those provisions relating to the separation of powers").

The private-employee status of FINRA's hearing officers means that they are nothing like the SEC's administrative law judges in *Lucia* (relied on by the Concurrence at 5-7) because the administrative law judges were unquestionably federal government personnel—and thus the "sole question" in *Lucia* was whether they were "'Officers of the United States' or simply employees of the Federal Government." 138 S. Ct. at 2051; *see also Free Enterprise Fund*, 561 U.S. at 485-87 (contrasting "private self-regulatory organizations" like FINRA with the "Government-created, Government-appointed" Public Company Accounting Oversight Board, which was "'part of the Government' for constitutional purposes" under *Lebron* and whose members were "Officers of the United States"). Here, there can be no question—under the precedent of both the Supreme Court and this Court— that FINRA's privately employed hearing officers are *not* "Officers of the United States."

That conclusion is consistent with the decisions of every other court to address the constitutional status of FINRA (and its predecessor NASD)—including the Second, Third, Fourth, and Ninth Circuits. Those courts have correctly and uniformly concluded that FINRA is not a state actor subject to constitutional requirements. In *Desiderio*, for example, the Second Circuit rejected constitutional claims against NASD because it "is a private actor, not a state actor"—NASD "receives no federal or state funding"; "[i]ts creation was not mandated by statute"; "nor does the government appoint its members or serve on any NASD board or committee." 191 F.3d at 206-07; *see also Duffield*, 144 F.3d at 1200 (rejecting "state action" arguments applied to "[p]rivate entities like the NYSE and the NASD"); *Jones v. SEC*, 115 F.3d 1173, 1183 (4th Cir. 1997) (agreeing with the SEC that "NASD is a private party"); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 698 (3d Cir. 1979) ("Congress preferred self-regulation by a private body over direct involvement of a governmental agency").

Moreover, the Constitution's appointments and removal requirements would still be inapplicable if FINRA were deemed to be a private party engaged in state action in the specific context of its disciplinary proceedings. *See Herron v. Fannie Mae*, 861 F.3d 160, 167 (D.C. Cir. 2017) (contrasting the "state action doctrine" that applies to a private party engaged in governmental action in a specific setting with claims that an entity is the "'Government itself'" for all purposes) (quoting *Lebron*,

12

513 U.S. at 378).  Courts have repeatedly rejected arguments that FINRA, or its predecessor NASD, engages in state action when carrying out its regulatory responsibilities under the Exchange Act.  *See*, *e.g.*, *D.L. Cromwell Investments, Inc. v. NASD Regul., Inc.*, 279 F.3d 155, 163 (2d Cir. 2002); *Epstein v. SEC*, 416 F. App'x 142, 146, 148 (3d Cir. 2010).

But even accepting the deeply flawed premise that FINRA is engaged in state action in the enforcement setting, FINRA hearing officers would still not be "Officers of the United States" because they would remain private employees of a private company under this Court's precedent.  Thus, when this Court concluded that Xerox was engaged in state action while performing the traditional public function of administering Medicaid, *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 42 (D.C. Cir. 2015), it did not go on to hold that Xerox was thereby transformed into an agency or instrumentality of the United States, such that the company's board members and officers were subject to constitutional appointments and removal requirements.  After *Peacock*, Xerox continued to operate as a private company under a board and officers who were not appointed or removable by the government.  Nor do the Constitution's appointments and removal requirements switch on and off from moment to moment depending on whether a private party's specific conduct qualifies as state action.  An entity is either subject to the Appointments Clause and removal powers (which makes it a federal governmental

13

body), or it is not (which makes it a private party).  A contrary conclusion would yield the irrational result that a private company would require a privately appointed and removable board governing its private conduct and a separate government-appointed and -removable board governing its state action.  The Constitution does not mandate such an unworkable, hybrid governance structure.

### B.    There Is No Private Nondelegation Violation.

Nor can the Injunction Order be sustained based on the only other argument Alpine advanced in its motion—the private nondelegation doctrine.  *See* Mot. 6.

The Supreme Court has long held that Congress may permissibly give a private entity a role in a regulatory program provided that it "function[s] subordinately" to, and is under the "authority and surveillance" of, a governmental body.  *Adkins*, 310 U.S. at 399.  In *Adkins*, the Supreme Court rejected an argument that Congress unconstitutionally "delegated its legislative authority to the [coal] industry" in authorizing industry boards to propose regulations subject to a government agency's "approv[al]," explaining that the agency's ultimate "authority" over the regulations meant that "law-making is not entrusted to the industry."  *Id.* at 388, 399; *see also Currin*, 306 U.S. at 14-16 (upholding statute requiring industry members to ratify the government's regulations before they took effect); *United States v. Rock Royal Co-op.*, 307 U.S. 533, 577-78 (1939) (similar).

14

Applying this precedent, every other court of appeals to consider the issue has "uniformly" concluded that the SEC-FINRA model does not violate the private nondelegation doctrine. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 877 (5th Cir. 2022). "In case after case, courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement makes the [self-regulatory organizations] permissible aides and advisors." *Oklahoma*, 62 F.4th at 229 (collecting cases).

This Court, discussing several of those cases, has correctly explained that they "resemble *Adkins*" because the private self-regulatory organizations at issue did not "stand on equal footing with a government agency." *Amtrak I*, 721 F.3d at 672 n.5. In particular, the SEC must approve FINRA's rules and "may abrogate, add to, and delete from all FINRA rules as it deems necessary." *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013) (citations omitted) (citing 15 U.S.C. § 78s(b)(1), (c)); *see Amtrak I*, 721 F.3d at 671 (explaining that delegation is permissible where the government "retains the discretion to 'approve[ ], disapprove[ ], or modif[y]'" proposed regulations). Moreover, FINRA must notify the SEC of any final disciplinary action, which is subject to *de novo* review by the Commission acting *sua sponte* or in response to a petition from the aggrieved party. *See* 15 U.S.C. § 78s(d)(1)-(2).

Thus, the Exchange Act ensures that FINRA's enforcement activities are "subject to a government plan," Injunction Order at 6 (Walker, J., concurring)—

15

while still preserving the discretion for FINRA "alone [to] determine[ ] which cases to investigate and when to file a complaint," App.30—demonstrating precisely why FINRA is appropriately "subordinate to" the SEC for nondelegation purposes, *Nat'l Horsemen's*, 53 F.4th at 887-88.

## II.    THIS CASE INVOLVES EXCEPTIONALLY IMPORTANT CONSTITUTIONAL QUESTIONS WITH FAR-REACHING PRACTICAL CONSEQUENCES.

The Injunction Order should be vacated because it could have profound practical consequences for FINRA, other self-regulatory organizations, and the millions of investors and other market participants who depend on broker-dealers to facilitate securities transactions.

Most immediately, the Injunction Order halts FINRA's expedited disciplinary proceeding against Alpine—which seeks to stop Alpine's pernicious practice of exacting unlawful, patently unfair fees from investors—leaving Alpine free to continue to victimize its customers and preventing FINRA from discharging its statutory mandate to "protect investors and the public interest." 15 U.S.C. § 78o-3(b)(6).

More broadly, as long as the Injunction Order remains in place, it threatens to upend the critical regulatory missions of both FINRA and other self-regulatory organizations. By placing this Court's imprimatur on Alpine's constitutional claims, the Injunction Order invites every other respondent in a FINRA disciplinary

16

proceeding immediately to file its own case seeking injunctive relief and provides a roadmap for enjoining FINRA's enforcement actions based on supposed constitutional flaws in its structure and operations. A definitive ruling in any of those cases that FINRA's hearing officers are subject to the Constitution's appointments and removal requirements would effectively decapitate FINRA's enforcement program by eliminating the hearing officers who preside over disciplinary proceedings and thereby destroy the self-regulatory model that has served the securities industry and investors so well for decades.

The Injunction Order also calls into question the constitutionality of dozens of other self-regulatory organizations that, like FINRA, carry out essential enforcement responsibilities in both the securities field and other regulatory settings. *See*, *e.g.*, *United States v. Solomon*, 509 F.2d 863, 869-70 (2d Cir. 1975) (Friendly, J.) (recognizing that member regulation "by stock exchanges" was "but one of many instances where government relies on self-policing by private organizations"). Under the Exchange Act, "[e]very self-regulatory organization" is required to "enforce compliance" with "its own rules"—including a "registered securities association" like FINRA; "national securities exchange[s]" like the New York Stock Exchange; and "registered clearing agenc[ies]" like the Depository Trust Company—and many of them use hearing officers or similar employees to discharge those enforcement responsibilities. 15 U.S.C. § 78s(g)(1)(A), (B), (C). The

17

constitutional arguments that prompted the Injunction Order would apply with equal force to these other self-regulatory organizations.

In sum, rehearing en banc and vacatur of the Injunction Order are warranted to reaffirm the constitutionality of FINRA and other self-regulatory organizations, to discourage copy-cat litigation by plaintiffs advancing the same baseless constitutional claims as Alpine, and to eliminate an aberrational and erroneous order that is impossible to reconcile with the precedent of the Supreme Court and this Court.

## CONCLUSION

The Court should grant rehearing en banc and vacate the Injunction Order.

Dated: July 19, 2023                     Respectfully submitted,

*/s/ Amir C. Tayrani*
Amir C. Tayrani
Alex Gesch
Max E. Schulman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 887-3692
ATayrani@gibsondunn.com
AGesch@gibsondunn.com
MSchulman@gibsondunn.com

*Attorneys for Defendant-Appellee*
*Financial Industry Regulatory Authority, Inc.*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume requirements of Federal Rule of Appellate Procedure 35(b)(2)(A) and Circuit Rule 35(b) because it contains 3,897 words; and

2.    This document complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.


 Dated:  July 19, 2023                    Respectfully submitted,

                                          */s/ Amir C. Tayrani*
                                          Amir C. Tayrani
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1050 Connecticut Avenue, N.W.
                                          Washington, D.C.  20036
                                          (202) 887-3692
                                          atayrani@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2023, I caused a true and correct copy of this petition to be electronically filed through the Court's CM/ECF system, which will send a notice of filing to all registered users.

Dated:  July 19, 2023                              Respectfully submitted,

*/s/ Amir C. Tayrani*
Amir C. Tayrani
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 887-3692
atayrani@gibsondunn.com

**EXHIBIT 1**

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 23-5129**                    **September Term, 2022**

**1:23-cv-01506-BAH**

**Filed On:** July 5, 2023

Alpine Securities Corporation,

         Appellant

Scottsdale Capital Advisors Corporation,

         Appellee

   v.

Financial Industry Regulatory Authority and
United States of America,

         Appellees

**BEFORE:**    Henderson, Walker*, and Garcia**, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for injunction pending appeal, the oppositions thereto, and the reply; and the administrative stay entered on June 8, 2023, it is

**ORDERED** that the administrative stay be dissolved.  It is

**FURTHER ORDERED** that the emergency motion for injunction pending appeal be granted and the Financial Industry Regulatory Authority be enjoined from continuing the expedited enforcement proceeding against Alpine Securities Corporation pending further order of the court.  Appellant has satisfied the stringent requirements for an

* A statement by Circuit Judge Walker, concurring in this order, is attached.
** Judge Garcia would deny the emergency motion for injunction pending appeal.

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 23-5129**                                              **September Term, 2022**

injunction pending appeal.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7,
20 (2008); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2021).


**Per Curiam**


                                        **FOR THE COURT:**
                                        Mark J. Langer, Clerk

                            BY:     /s/
                                        Michael C. McGrail
                                        Deputy Clerk

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 23-5129**                                          **September Term, 2022**

WALKER, *Circuit Judge*, concurring:

*"Because the entire 'executive Power' belongs to the President alone, it can only be exercised by the President and those acting under him."*

To buy and sell securities, brokers must register with a self-regulatory organization. 15 U.S.C. § 78o(a)(1), (b)(1)(B). Self-regulatory organizations are responsible for "enforc[ing] compliance" with the "provisions" of the Securities and Exchange Act, and the "rules and regulations thereunder." *Id.* § 78s(g)(1); *see also id.* § 78o-3(b)(7).

Alpine Securities Corporation is a securities broker. Earlier this year, it found itself in trouble with its self-regulatory organization, the Financial Industry Regulatory Authority. Believing that Alpine violated a preexisting cease-and-desist order, FINRA brought an expedited enforcement action seeking to stop Alpine from selling securities. In response, Alpine filed this suit, collaterally attacking FINRA's authority to conduct its enforcement proceeding.

All that might sound like a run-of-the-mill encounter with the government. But here's the twist: Self-regulatory organizations are not government agencies. They are private corporations responsible for regulating securities brokers. *Id.* § 78s(g)(1).

Alpine says FINRA's enforcement action violates the Constitution because FINRA's hearing officers impermissibly wield executive power that may be exercised only by the President and officers under his supervision. And it seeks an injunction pending appeal to block its expulsion from FINRA—the so-called "corporate death penalty"—while it argues its case. App. 48.

By granting Alpine's request, the Court preserves the status quo and allows full consideration of Alpine's constitutional argument.

I

We will enjoin agency action pending appeal when the party seeking the injunction is likely to win on the merits, it will suffer irreparable harm without an injunction, and the equities and public interest favor our intervention. *Nken v. Holder,*

---

_____

[*] *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 143 S. Ct. 1720, 1741 (2023) (Thomas, J., concurring) (cleaned up).

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 23-5129**                                    **September Term, 2022**

556 U.S. 418, 426, 435 (2009); *see also John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017).

If Alpine is likely to succeed on the merits, the other boxes are easily checked. Alpine would suffer an irreparable harm without an injunction because the ongoing FINRA enforcement proceedings would put it out of business. Plus, the resolution of claims by an unconstitutionally structured adjudicator is a "here-and-now injury" that cannot later be remedied. *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023) (cleaned up).

An injunction would also be equitable and in the public interest. The public interest favors preventing the deprivation of individual rights and abuses of government power. *See Nken*, 556 U.S. at 436. If Alpine's constitutional challenge has merit, that is the case here: It will be "subject[] to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 598 U.S. at 191.

The interests cutting the other way are not as strong. The public has an interest in timely enforcement against those who violate the law. *Nken*, 556 U.S. at 436. But here the only evidence that Alpine *has* violated the law is FINRA's say so. And if Alpine is correct on the merits, then FINRA is an illegitimate decisionmaker.

That leaves Alpine's likelihood of success on the merits. At this early stage, Alpine has raised a serious argument that FINRA impermissibly exercises significant executive power. So the Court is correct to grant an injunction preserving Alpine's business while it litigates its constitutional challenge. To be clear, "I do not rule out the possibility that further briefing and argument might convince me that my current view is unfounded." *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissenting); *see also Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) ("[t]o reiterate," a vote to stay is "not a decision on the merits").

II

In our system of government, the President alone is "vested" with the "executive Power." U.S. Const. art. II, § 1.

To ensure that the executive power remains with the President, the Constitution puts limits on those who exercise it on the President's behalf. Anyone who "wield[s] significant executive power" must be an Officer of the United States. *See Buckley v. Valeo*, 424 U.S. 1, 126 (1976). Those officers must generally be removable by the President or an officer subordinate to the President. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2211 (2020) (principal officers must be removeable by the President).

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 23-5129**                              **September Term, 2022**

And they must be appointed by an appropriate government body under the Appointments Clause.  U.S. Const. art. II, § 2, cl. 2; *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018).

Applying those principles, the Supreme Court held that Administrative Law Judges *within* the SEC were Officers of the United States who must be appointed in accordance with the Appointments Clause.  *Lucia*, 138 S. Ct. at 2049.  The ALJs, the Court reasoned, "exercised significant authority" because they had "discretion" to exercise an "important" government function—"enforc[ing] the nation's securities laws." *Id.* at 2049, 2051, 2053 (cleaned up).  The ALJs could, among other things, demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt.  *Id.* at 2053.

FINRA's hearing officers are near carbon copies of those ALJs.  They are tasked by statute with enforcing the nation's securities laws.  15 U.S.C § 78s(g)(1).  They can "levy sanctions that carry the force of federal law."  *Turbeville v. FINRA*, 874 F.3d 1268, 1270 (11th Cir. 2017) (citing 15 U.S.C. § 78o-3(b)(7)).  And like *Lucia*'s ALJs, hearing officers demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt. *See* FINRA Rules 8210 (Provision of Information and Testimony), 9252 (Requests for Information), 9235 (Hearing Officer Authority), 9263 (Evidence Admissibility), 9280 (Contemptuous Conduct).[1]

True, the SEC can review FINRA's decisions "on its own motion, or upon application by any person aggrieved . . . filed within thirty days."  15 U.S.C. § 78s(d)(2).  But that doesn't differentiate the hearing officers from *Lucia*'s ALJs.  The SEC could review the ALJs' decisions too.  Yet that "ma[d]e no difference" to whether they exercised significant executive power.  *Lucia*, 138 S. Ct. at 2054.  The Court emphasized that the SEC "adopts [ALJs'] credibility findings absent overwhelming evidence to the contrary."  *Id.* (cleaned up).  The standard of review is similar here.  *See Daniel D. Manoff*, 55 S.E.C. 1155, n.6 (2002) (credibility determinations made by NASD—FINRA's predecessor—"can be overcome only when there is 'substantial evidence' for doing so") (cleaned up).

---

[1] To be sure, there are some minor differences between the FINRA hearing officers and *Lucia*'s ALJs.  For example, the ALJs "administer Oaths."  *Lucia*, 138 S. Ct. at 2053.  In FINRA hearings, that job is left to "a court reporter or notary public."  FINRA Rule 9262 (Testimony).

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 23-5129**                                    **September Term, 2022**

In other words, if the ALJs in *Lucia* exercised "significant" executive power, then FINRA hearing officers probably do too.  *Lucia*, 138 S. Ct. at 2051.

Does it make a difference that FINRA hearing officers are employees of a nominally private corporation?  Probably not.  Though FINRA is private, its enforcement activities are controlled by the government.  The Securities Exchange Act *requires* FINRA to enforce government standards, including statutory provisions and SEC regulations.  15 U.S.C. § 78s(g)(1).  And FINRA's own rules are generally vetted by the SEC before taking effect.  *Id.* § 78s(b)(1).  And the SEC can modify them at any time.  *Id.* § 78s(c).  And FINRA does not enjoy prosecutorial discretion—indeed, the SEC may remove FINRA's directors and officers if they do not enforce government standards.  *Id.* §§ 78s(h)(4), 78o-3(b)(7).  And even FINRA's code of procedure is approved by the SEC.  *See Regulatory Notice 08-57*, FINRA (2008), https://www.finra.org/rules-guidance/notices/08-57 (FINRA announces SEC approval of its code of procedure, among other things).

From start to finish, FINRA hearing officers execute government laws subject to a government plan, with little to no room for private control.  *Cf. Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) ("a private entity can qualify as a state actor . . . when the government compels the private entity to take a particular action").

Despite seeming to exercise the executive authority of the United States, FINRA hearing officers remain private employees.  That presents two constitutional issues that will benefit from "full briefing, oral argument, and our usual extensive internal deliberations."  *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring).  First, FINRA hearing officers are not appointed by a government body pursuant to the Appointments Clause.  *See Lucia*, 138 S. Ct. at 2051.  Second, they are shielded from removal by the SEC except for cause.  15 U.S.C. § 78s(h)(4).  And the Supreme Court has assumed that the President may not remove SEC Commissioners at will.  *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 487 (2010).  That means that there are two layers of removal protection—one for the Commissioners and one for the hearing officers.  That may well infringe on the President's "ability to execute the laws . . . by holding his subordinates accountable for their conduct."  *Id.* at 496.

FINRA might prevail on those issues, but on the briefing before us, that seems unlikely.  It would be odd if the Constitution *prohibits* Congress from vesting significant executive power in an unappointed and unremovable government administrator but *allows* Congress to vest such power in an unappointed and unremovable private hearing officer.  *See Lucia*, 138 S. Ct. at 2051; *see also Department of Transportation*

Page 6

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

## No. 23-5129                                      September Term, 2022

*v. Association of American Railroads*, 575 U.S. 43, 57 (2015) (Alito, J., concurring) ("There is good reason to think that those who have not sworn an oath cannot exercise significant authority of the United States.").

To so hold could create a constitutional loophole. It would suggest that Congress was free to fix the constitutional infirmity with the ALJs in *Lucia* simply by moving them outside of the Executive Branch. But that wouldn't cure the basic defect motivating the Supreme Court: Only the President and properly appointed Officers of the United States may exercise significant executive power. *See Lucia*, 138 S. Ct. at 2051 (citing *Buckley*, 424 U.S. at 126). "What cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, No. 20-1199, slip op. 39 (U.S. June 29, 2023) (cleaned up).

To be sure, Congress may authorize private organizations to work with government regulators. For example, it does not violate the Constitution to let private entities make recommendations that the government later approves. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940). But the hearing officers here do not just make recommendations—they enforce securities laws and decide parties' rights. And unless the losing party appeals to the SEC or the SEC steps in unprompted, the hearing officers' decisions are final.

***

There is a serious argument that FINRA hearing officers exercise significant executive power. And it is undisputed that they do not act under the President. That may be a constitutional problem. *See* U.S. Const. art. II, § 1, cl. 1; *id.* art. II, § 2, cl. 2.

The Court is right to grant an injunction pending appeal to let Alpine litigate its case against FINRA, without the agency first sentencing it to the corporate death penalty.

**EXHIBIT 2**

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and this Court's Rule 26.1, Defendant-Appellee Financial Industry Regulatory Authority, Inc. states that it is a not-for-profit, non-stock Delaware corporation, and no publicly held company has a 10% or greater ownership in it.

**EXHIBIT 3**

## CERTIFICATE AS TO PARTIES

Pursuant to Circuit Rule 28(a)(1)(A), Defendant-Appellee Financial Industry Regulatory Authority, Inc. submits this Certificate as to Parties.

The parties before this Court are Plaintiff-Appellant Alpine Securities Corporation, Defendant-Appellee Financial Industry Regulatory Authority, Inc., and Intervenor Defendant-Appellee the United States of America.

The above parties also appeared before the district court, in addition to Scottsdale Capital Advisors Corporation, which is not a party before this Court.  No *amici* appeared below or have appeared before this Court.