ORAL ARGUMENT NOT YET SCHEDULED

No. 23-5129

IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———— ◆◆ ————

ALPINE SECURITIES CORPORATION,

*Plaintiff-Appellant,*

SCOTTSDALE CAPITAL ADVISORS CORPORATION,

*Plaintiff-Appellee,*

—v.—

FINANCIAL INDUSTRY REGULATORY AUTHORITY,

*Defendant-Appellee,*

UNITED STATES OF AMERICA,

*Intervenor for Defendant-Appellee.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
NO. 1:23-CV-01506, HON. BERYL A. HOWELL

————

## BRIEF FOR *AMICUS CURIAE*
## MUNICIPAL SECURITIES RULEMAKING BOARD
## IN SUPPORT OF NEITHER PARTY

————

JONATHAN E. BARBEE
MOLOLAMKEN LLP
430 Park Avenue
New York, New York 10022
(212) 607-8160
jbarbee@mololamken.com

ROBERT K. KRY
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000
rkry@mololamken.com

*Attorneys for Amicus Curiae*
*Municipal Securities Rulemaking Board*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), *amicus* Municipal Securities Rulemaking Board ("MSRB") states as follows:

Parties and *Amici*.  Except for the following, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Brief for Appellant.  The Municipal Securities Rulemaking Board and the New Civil Liberties Alliance are *amici* in this Court.

Rulings Under Review.  References to the rulings at issue appear in the Brief for Appellant.

Related Cases.  The case on review was not previously before this Court or any other court.  The MSRB is not aware of any related cases.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1(a), the MSRB states that it is a non-profit, non-stock corporation organized under the Virginia Nonstock Corporation Act.  The MSRB has no parent corporation, and no publicly held company has a 10% or greater ownership interest in it.  Established in 1975, the MSRB is a private self-regulatory organization for the municipal securities market.  The MSRB serves the public interest and upholds the public trust by establishing rules that promote a transparent, efficient, and fair municipal securities market.

## <u>CERTIFICATE OF COUNSEL</u>

Pursuant to Circuit Rule 29(d), counsel certifies that this brief is being filed

separately from any other *amicus* brief because it focuses on an issue unique to the

MSRB, specifically, whether the MSRB is a private or governmental entity.  No

other *amicus* has a direct interest in that issue.

# TABLE OF CONTENTS

Page

INTEREST OF *AMICUS CURIAE*...........................................................................1

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS .........2

STATUTES AND REGULATIONS..........................................................................3

STATEMENT OF FACTS ........................................................................................3

I.      The MSRB's Mission ....................................................................................3

II.     The MSRB's Structure ..................................................................................4

III.    The SEC's Statutory Oversight .....................................................................7

ARGUMENT ............................................................................................................8

I.      The MSRB Is a Private Entity ......................................................................9

        A.      *Lebron* Sets Forth the Governing Standard..........................................9

        B.      The MSRB Is a Private Entity Under *Lebron* .....................................14

II.     *Blount* Did Not Hold that the MSRB Is a Governmental Entity...................19

CONCLUSION .......................................................................................................22

# TABLE OF AUTHORITIES[†]

Page(s)

## CASES

\* *Blount v. SEC*,
    61 F.3d 938 (D.C. Cir. 1995)............................................................1, 2, 19, 20, 21

*Corr v. Metro. Wash. Airports Auth.*,
    702 F.3d 1334 (Fed. Cir. 2012) ...........................................................11

*Dep't of Transp. v. Ass'n of Am. R.R.*,
    575 U.S. 43 (2015)...............................................................................10, 11

*Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*,
    140 S. Ct. 1649 (2020)........................................................................12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010).............................................................................10

*Hack v. President & Fellows of Yale Coll.*,
    237 F.3d 81 (2d Cir. 2000) .................................................................15

*Hall v. Am. Nat'l Red Cross*,
    86 F.3d 919 (9th Cir. 1996) ...............................................................16

\* *Herron v. Fannie Mae*,
    861 F.3d 160 (D.C. Cir. 2017)............................................ 11, 12, 14, 15, 18, 20

*Kerpen v. Metro. Wash. Airports Auth.*,
    907 F.3d 152 (4th Cir. 2018) .............................................................11

\* *Lebron v. Nat'l R.R. Passenger Corp.*,
    513 U.S. 374 (1995)........................................... 8, 9, 10, 11, 12, 13, 14,
    15, 16, 17, 18, 19

*Montilla v. Fed. Nat'l Mortg. Ass'n*,
    999 F.3d 751 (1st Cir. 2021)...............................................................16

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
    No. 5:21-CV-071-H, 2023 WL 3293298 (N.D. Tex. May 4, 2023) .................12

---

[†] Authorities upon which we chiefly rely are marked with asterisks.

*Perpetual Sec., Inc. v. Tang,*
   290 F.3d 132 (2d Cir. 2002) ................................................................14

*Sunshine Anthracite Coal Co. v. Adkins,*
   310 U.S. 381 (1940)................................................................................13

*White Coat Waste Project v. Greater Richmond Transit Co.,*
   35 F.4th 179 (4th Cir. 2022) ..............................................................16

## STATUTES AND RULES

15 U.S.C. § 78c(a)(26)................................................................................7

15 U.S.C. § 78o-3(b)(7)............................................................................4

15 U.S.C. § 78o-4(a)(1)..........................................................................20

15 U.S.C. § 78o-4(b)(1)..............................................................3, 5, 6, 16

15 U.S.C. § 78o-4(b)(2).......................................................................4, 19

15 U.S.C. § 78o-4(b)(2)(B) ...................................................................5, 6

15 U.S.C. § 78o-4(b)(2)(C) .......................................................................4

15 U.S.C. § 78o-4(b)(2)(J) ........................................................................6

15 U.S.C. § 78o-4(c)(1)...........................................................................20

15 U.S.C. § 78o-4(c)(2).............................................................................4

15 U.S.C. § 78o-4(c)(5).............................................................................4

15 U.S.C. § 78o-4(c)(8).............................................................................6

15 U.S.C. § 78o-4(c)(9).............................................................................7

15 U.S.C. § 78s(b) ....................................................................................7

15 U.S.C. § 78s(b)(1)................................................................................7

15 U.S.C. § 78s(b)(2)(C)(i) .......................................................................7

15 U.S.C. § 78s(b)(3)(A) ..........................................................................8

15 U.S.C. § 78s(b)(3)(C) ...................................................................8

15 U.S.C. § 78s(c) .........................................................................7, 8

15 U.S.C. § 78s(c)(2) .......................................................................8

15 U.S.C. § 78s(c)(4)(A) ..................................................................8

15 U.S.C. § 78w(b) ...........................................................................7

15 U.S.C. § 7211(a) .........................................................................10

15 U.S.C. § 7211(c) .........................................................................10

15 U.S.C. § 7211(e)(4) ..............................................................10, 17

Securities Acts Amendments of 1975, Pub. L. No. 94-29,
    sec. 13, 89 Stat. 97, 131 (1975):

    § 15B(b)(1), 89 Stat. at 132..................................3, 5, 14, 18

    § 15B(b)(2), 89 Stat. at 132 ..........................................4

    § 15B(b)(2)(B), 89 Stat. at 132 ..................................5, 6

Dodd-Frank Wall Street Reform and Consumer Protection Act,
    Pub. L. No. 111-203, 124 Stat. 1376 (2010):

    Sec. 975(b)(1), § 15B(b)(1)(B), 124 Stat. at 1916...............5

    Sec. 975(b)(2)(C), § 15B(b)(2)(B), 124 Stat. at 1917.........6

MSRB Rule A-3(a) ............................................................................6

MSRB Rule A-3(b) ............................................................................5

MSRB Rule A-3(b)(i)(1)....................................................................6

MSRB Rule A-3(b)(ii)(2) ..................................................................5

MSRB Rule A-7 .................................................................................6

MSRB Rule G-37 ........................................................................19, 20

## OTHER AUTHORITIES

Richard E. Brodsky, *"Something Called the 'Municipal Securities Rulemaking Board' ": Unexamined Issues of Constitutionality*, 8 Am. U. Bus. L. Rev. 23 (2019)......................................................17

MSRB Amended and Restated Articles of Incorporation (Sept. 9, 2020).............................................................................4

MSRB Annual Report (2022) ...................................................7

S. Rep. No. 94-75 (1975) ......................................................3, 4

# GLOSSARY OF ABBREVIATIONS

FINRA       Financial Industry Regulatory Authority

MSRB        Municipal Securities Rulemaking Board

MWAA        Metropolitan Washington Airports Authority

PCAOB       Public Company Accounting Oversight Board

SEC         Securities and Exchange Commission

## INTEREST OF *AMICUS CURIAE*

For over 45 years, the Municipal Securities Rulemaking Board ("MSRB") has served as the private self-regulatory organization for the municipal securities industry. The MSRB's mission is to protect investors, issuers, and the public interest by promoting a fair and efficient municipal securities market.

The MSRB agrees with the district court's conclusion that the Financial Industry Regulatory Authority ("FINRA") is a private entity, not a governmental one. The district court properly observed that FINRA is "a private organization incorporated under the laws of Delaware," that "[n]o government entity funds FINRA nor plays any role in the selection of its board members or officers," and that FINRA "perform[s] functions that are neither contemplated nor shared by the SEC." Dkt. 88 at 16-17. Those facts are more than sufficient to preclude any finding that FINRA is part of the government.

In reaching its conclusion, however, the district court contrasted FINRA with the MSRB. Dkt. 88 at 16. The court explained that "neither an act of Congress nor the SEC created FINRA" and then characterized this Court's decision in *Blount v. SEC*, 61 F.3d 938 (D.C. Cir. 1995), as "holding that the Municipal Securities Rulemaking Board was a state actor because, *inter alia*, it was 'created by an act of Congress.'" Dkt. 88 at 16.

The district court's comments about the MSRB were both unnecessary and incorrect. The MSRB is a private self-regulatory organization, not a government entity. And while the MSRB differs from FINRA in certain respects, none of them undermines its private status under governing Supreme Court and D.C. Circuit precedent. Nothing in this Court's decision in *Blount* says otherwise.

The MSRB has a strong interest in this appeal because a decision concluding that FINRA is part of the government could cast doubt on the MSRB's status as well. But even a decision upholding FINRA's private status could affect the MSRB's interests if the Court's reasoning contrasted FINRA with the MSRB, as the district court did below. The MSRB is not asking the Court to resolve its status in this case, nor does it expect the Court to do so. But the Court should reject the district court's unnecessary comments suggesting that the MSRB should be treated differently from FINRA for purposes of its private or governmental status.

All parties have consented to the filing of this brief.

## STATEMENT OF AUTHORSHIP
## AND FINANCIAL CONTRIBUTIONS

*Amicus* certifies that no counsel for either party authored this brief in whole or in part, that no party or party's counsel contributed money intended to fund the preparation or submission of the brief, and that no one other than *amicus* contributed money intended to fund the preparation or submission of the brief.

2

## STATUTES AND REGULATIONS

Relevant statutory provisions are reproduced in the addendum to this brief.

## STATEMENT OF FACTS

## I.  THE MSRB'S MISSION

For many years, private self-regulatory organizations like the New York Stock Exchange and the National Association of Securities Dealers have helped regulate the national securities markets subject to oversight by the Securities and Exchange Commission ("SEC").  *See* S. Rep. No. 94-75, at 22-23 (1975).  By the 1970s, however, Congress became concerned that that regime was not adequately addressing fraudulent practices in the market for debt securities issued by state and local governments.  *See id.* at 38-43.  Recognizing that "self-regulation has played and will continue to play an essential role in regulating the corporate securities markets," Congress decided to "extend this principle to the municipal securities market" by establishing a new "self-regulatory structure for the municipal securities industry."  *Id.* at 46.

Congress did so by enacting Section 13 of the Securities Acts Amendments of 1975, Pub. L. No. 94-29, 89 Stat. 97, 131 (1975).  That statute directed the SEC to "establish a Municipal Securities Rulemaking Board."  *Id.* §15B(b)(1), 89 Stat. at 132 (codified as amended at 15 U.S.C. §78o-4(b)(1)).  Congress charged the Board with "propos[ing] and adopt[ing] rules . . . with respect to transactions in

3

municipal securities effected by brokers, dealers, and municipal securities dealers." *Id.* §15B(b)(2) (codified as amended at 15 U.S.C. §78o-4(b)(2)).

The statute sets forth certain broad requirements for the Board's rules. For example, the rules must be "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, [and] to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in municipal securities and municipal financial products." 15 U.S.C. §78o-4(b)(2)(C).

The MSRB differs from most self-regulatory organizations in that it has no authority to enforce its own rules. *See* S. Rep. No. 94-75, at 47 ("Unlike the existing self-regulatory organizations, the Board would not . . . have any inspection or enforcement powers . . . ."). Instead, the MSRB's rules are enforced by the SEC, other federal regulators, or FINRA. 15 U.S.C. §78o-4(c)(2), (5); *id.* §78o-3(b)(7).

## II.    THE MSRB'S STRUCTURE

The MSRB is a non-profit, non-stock corporation organized under the Virginia Nonstock Corporation Act. MSRB Amended and Restated Articles of Incorporation §§2-3 (Sept. 9, 2020). The MSRB's rulemaking responsibilities and management are vested in its Board of Directors, who are the statutory members of the Board. *Id.* §5(a).

Initially, the Board was "composed . . . of fifteen members appointed by the [Securities and Exchange] Commission," who would "serve as members for a term of two years."  Pub. L. No. 94-29, sec. 13, §15B(b)(1), 89 Stat. at 132.  After that initial two-year period, however, all Board members have been chosen through "an election . . . held under rules adopted by the Board."  *Id.* (codified as amended at 15 U.S.C. §78o-4(b)(1)); *see also* 15 U.S.C. §78o-4(b)(2)(B) (requiring rules to "establish fair procedures for the nomination and election of members of the Board").  The Board's rules provide that its Nominating Committee accepts applications and proposes nominees to the Board, which votes to accept or reject each nominee.  MSRB Rule A-3(b).  "Any interested member of the public . . . may submit an application to the committee."  MSRB Rule A-3(b)(ii)(2).  Thus, no government entity currently plays any role in selecting the Board's members.

Originally, the Board was composed of five bank representatives, five broker-dealer representatives, and five public representatives.  Pub. L. No. 94-29, sec. 13, §15B(b)(1), 89 Stat. at 132.  The public representatives were "subject to approval by the Commission to assure that no one of them is associated with any broker, dealer, or municipal securities dealer."  *Id.* §15B(b)(2)(B), 89 Stat. at 133.  In 2010, Congress amended the statute to require eight public representatives and seven regulated-entity representatives.  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, sec. 975(b)(1), §15B(b)(1)(B), 124

5

Stat. 1376, 1916 (2010) (codified at 15 U.S.C. § 78o-4(b)(1)).  Congress eliminated the requirement of SEC approval for public representatives.  *Id.* sec. 975(b)(2)(C), § 15B(b)(2)(B), 124 Stat. at 1917 (codified at 15 U.S.C. § 78o-4(b)(2)(B)).

Throughout the MSRB's history, the statute has authorized the Board to alter the terms of service of its members or to modify the Board's size.  Pub. L. No. 94-29, sec. 13, § 15B(b)(2)(B), 89 Stat. at 133 (codified as amended at 15 U.S.C. § 78o-4(b)(2)(B)).  The Board currently consists of fifteen members — eight public representatives and seven regulated representatives — each of whom serves for a four-year term.  MSRB Rule A-3(a), (b)(i)(1).

The SEC has authority to remove the MSRB's board members.  Specifically, the SEC may remove a member if it finds, after notice and opportunity for a hearing, that the member "has willfully (A) violated any provision of this chapter, the rules and regulations thereunder, or the rules of the Board or (B) abused his authority."  15 U.S.C. § 78o-4(c)(8).

The MSRB is not funded by any government tax or expenditure.  Instead, the Board's rules provide for the Board to charge "each municipal securities broker, municipal securities dealer, and municipal advisor . . . such reasonable fees and charges as may be necessary or appropriate to defray the costs and expenses of operating and administering the Board."  15 U.S.C. § 78o-4(b)(2)(J); *see* MSRB Rule A-7.  Fines that the SEC or other self-regulatory organizations collect for

6

enforcing Board rules are shared with the Board.  15 U.S.C. § 78o-4(c)(9).  Those fines, however, account for only a de minimis portion (about 2%) of the Board's revenue.  MSRB Annual Report 15 (2022).

## III.  THE SEC'S STATUTORY OVERSIGHT

The SEC has supervisory authority over the MSRB's rulemaking comparable to its authority over other self-regulatory organizations like FINRA. To that end, the Securities Exchange Act defines the MSRB to be a "self-regulatory organization," albeit "solely for purposes of sections 78s(b), 78s(c), and 78w(b)" — the provisions governing SEC oversight over self-regulatory organization rulemaking.  15 U.S.C. § 78c(a)(26).

Pursuant to those provisions, all of the MSRB's proposed rules must be submitted to the SEC.  15 U.S.C. § 78s(b)(1).  The SEC publishes each proposal for public comment.  *Id.*  Generally, "[n]o proposed rule . . . shall take effect unless approved by the Commission."  *Id.*  The SEC approves a rule if it is "consistent with the requirements of this chapter and the rules and regulations . . . applicable to [the Board]."  *Id.* § 78s(b)(2)(C)(i).

Despite those general requirements, the MSRB can make a proposed rule effective immediately upon filing with the SEC if the rule "(i) constitut[es] a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule of the [Board], (ii) establish[es] or chang[es] a due,

fee, or other charge . . . , or (iii) [is] concerned solely with the administration of the [Board] or other matters which the Commission . . . may specify." 15 U.S.C. §78s(b)(3)(A). The SEC, however, may "summarily . . . suspend" such a rule if "necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter" and institute proceedings to determine whether to approve or disapprove the rule. *Id.* §78s(b)(3)(C).

In addition to approving rules in the first instance, the SEC may also modify the MSRB's existing rules. "The Commission, by rule, may abrogate, add to, and delete from . . . the rules of [the Board] . . . as the Commission deems necessary or appropriate to insure the fair administration of the [Board], to conform its rules to requirements of this chapter . . . , or otherwise in furtherance of the purposes of this chapter." 15 U.S.C. §78s(c). The SEC must comply with the Administrative Procedure Act and hold a hearing in doing so. *Id.* §78s(c)(2), (4)(A).

## **ARGUMENT**

The MSRB, like FINRA, is a private entity, not a governmental one. To decide whether an entity is private or governmental for purposes of the Constitution's structural provisions, courts apply the three-prong test from *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995). That test turns on whether the government created the entity, whether it did so to further government objectives, and whether it retained permanent authority to appoint a majority of the

entity's directors. *Id.* at 400. Binding precedent makes clear that ***all three*** of those prongs must be satisfied before an entity may be deemed part of the government. As a result, even though the MSRB differs from FINRA in that the MSRB was created by the government while FINRA was not, that difference is beside the point: The critical fact is that, for the MSRB no less than FINRA, the government has no permanent control over the appointment of the entity's members. The MSRB is therefore a private entity, just like FINRA.

## I.    THE MSRB IS A PRIVATE ENTITY

### A.    *Lebron* Sets Forth the Governing Standard

Courts have applied a variety of standards to determine whether particular conduct constitutes "state action" subject to constitutional restraints. *See Lebron*, 513 U.S. at 378. But when determining whether an entity itself is part of the government for purposes of the Constitution's structural provisions such as the Appointments Clause or separation of powers, courts look to the Supreme Court's three-prong standard in *Lebron*.

In *Lebron*, the Supreme Court held that Amtrak was a government entity rather than a private one. The Court set forth a three-prong test: Where "the Government [1] creates a corporation by special law, [2] for the furtherance of governmental objectives, and [3] retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the

Government."  513 U.S. at 400.  Amtrak met that test.  "Amtrak was created by a special statute, explicitly for the furtherance of federal governmental goals," and "six of the corporation's eight externally named directors . . . [we]re appointed directly by the President of the United States."  *Id.* at 397.

Although *Lebron* itself involved a First Amendment challenge, courts have repeatedly applied *Lebron*'s three-prong test to determine whether an entity is part of the government for purposes of the Constitution's structural provisions.  In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), for example, the plaintiffs challenged the constitutionality of the Public Company Accounting Oversight Board ("PCAOB") on separation of powers and Appointments Clause grounds.  *Id.* at 492-514.  Congress created the PCAOB, assigned it public regulatory functions, and granted the SEC permanent authority to appoint its members.  15 U.S.C. § 7211(a), (c), (e)(4).  Citing *Lebron*, the Supreme Court observed that "the parties agree that the [PCAOB] is 'part of the Government' for constitutional purposes."  561 U.S. at 485-86.

In *Department of Transportation v. Association of American Railroads*, 575 U.S. 43 (2015), the Supreme Court looked to similar factors in concluding that Amtrak was a government entity for separation of powers and nondelegation purposes.  *Id.* at 50-55.  The Court emphasized that the Secretary of Transportation owned most of Amtrak's stock and that the President appointed nearly all of its

directors.  *Id.* at 51.  Congress also defined Amtrak's goals by statute and mandated certain aspects of its day-to-day operations.  *Id.* at 53.  Finally, Amtrak was dependent on federal financial support.  *Id.*  The Court cited *Lebron* for the proposition that "the practical reality of federal control and supervision" governs an entity's governmental or private status.  *Id.* at 55.[1]

In *Corr v. Metropolitan Washington Airports Authority*, 702 F.3d 1334 (Fed. Cir. 2012), the Federal Circuit applied *Lebron* to decline jurisdiction over a separation of powers challenge to the Metropolitan Washington Airports Authority ("MWAA").  Because Congress was not primarily responsible for creating the MWAA, the agency served only limited federal interests, and the President appointed only three of the agency's thirteen board members, the Federal Circuit held that the MWAA was not a federal government entity.  *Id.* at 1336-38.

Similarly, in *Kerpen v. Metropolitan Washington Airports Authority*, 907 F.3d 152 (4th Cir. 2018), the Fourth Circuit applied *Lebron* to an Appointments Clause and nondelegation challenge to the MWAA.  Because the federal government neither created nor controlled the MWAA, the court held that the agency was not part of the federal government under *Lebron*.  *Id.* at 158-60; *see*

---

[1] Although *Association of American Railroads* considered some factors that arguably go beyond the three-prong *Lebron* test, this Court has refused to interpret the case as modifying *Lebron*.  *See Herron v. Fannie Mae*, 861 F.3d 160, 168 (D.C. Cir. 2017) (rejecting the argument that *Association of American Railroads* modified *Lebron* and noting that "we generally presume that the Court does not overturn or limit its prior holdings through silence or implication").

also *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2023 WL 3293298, at *13-15 (N.D. Tex. May 4, 2023) (applying *Lebron* to reject an Appointments Clause challenge to a private entity that regulated horseracing subject to Federal Trade Commission oversight), *appeal docketed*, No. 23-10520 (5th Cir. May 19, 2023).

Applying the *Lebron* test to structural constitutional claims, rather than more amorphous state action standards, makes sense. The Supreme Court observed in *Lebron* that "actions of private entities can sometimes be regarded as governmental action for constitutional purposes" and that the Court had articulated a variety of tests for identifying such state action. 513 U.S. at 378. But whether a particular ***action*** qualifies as state action is a different question from whether the ***entity itself*** is part of the government. *Id.*; *see also Herron v. Fannie Mae*, 861 F.3d 160, 167 (D.C. Cir. 2017) (drawing the same distinction).

What matters for purposes of the Constitution's structural provisions is whether the entity itself is part of the government. The Appointments Clause, separation of powers, and similar structural provisions apply only to the government. *See, e.g.*, *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1658 (2020) ("If [officers] are not officers of the United States, . . . the Appointments Clause says nothing about them."). Thus, whether an entity's conduct in a particular instance may amount to state action does not

12

determine whether the entity itself is part of the government and therefore subject to the Constitution's structural mandates about how the government must be organized.  The *Lebron* test keeps the focus on the relevant issue.

A holding that any entity that engages in state action must comply with the Constitution's structural provisions would be inconsistent with decades of precedent.  Supreme Court case law permits private entities to exercise state authority so long as the government retains adequate oversight.  *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940) (rejecting nondelegation challenge to industry boards that proposed minimum coal prices because boards "function[ed] subordinately to the [National Bituminous Coal] Commission").  Private entities, however, rarely if ever satisfy structural constitutional mandates like the Appointments Clause or separation of powers.  A holding that any entity that engages in state action must comply with those structural provisions would transform existing doctrine that ***limits*** delegations of state power to private entities into a doctrine that ***categorically prohibits*** such delegations.  That is not the law.

Courts should therefore apply the *Lebron* test in determining whether entities like FINRA or the MSRB are part of the government for purposes of structural constitutional challenges.

### B.    The MSRB Is a Private Entity Under *Lebron*

The district court correctly held that FINRA is a private entity for structural constitutional purposes.  As explained above, the *Lebron* test has three prongs: (1) the government created the entity by a special law; (2) the entity furthers governmental objectives; and (3) the government retains permanent authority to appoint a majority of the entity's directors.  513 U.S. at 400.  As the district court observed, FINRA does not satisfy *any* of those prongs.  Dkt. 88 at 16-17.  FINRA therefore clearly is not a government entity under *Lebron*.  *Accord Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137-39 (2d Cir. 2002) (holding that the National Association of Securities Dealers was a private entity under *Lebron*).

To be sure, the MSRB differs from FINRA with respect to the first prong. While Congress did not create FINRA, Congress did create the MSRB (by directing the SEC to establish it).  *See* Securities Acts Amendments of 1975, Pub. L. No. 94-29, sec. 13, §15B(b)(1), 89 Stat. 97, 132 (1975).  But the district court erred in suggesting that this difference mattered.  Dkt. 88 at 16.  Precedent makes clear that *Lebron* establishes a three-prong test and that an entity must satisfy *all three prongs* to qualify as a government entity.

This Court directly addressed that issue in *Herron v. Fannie Mae*, 861 F.3d 160 (D.C. Cir. 2017).  That case concerned whether Fannie Mae was a government entity under *Lebron*.  The Court observed that "[t]his case satisfies the first two

*Lebron* criteria" because "Congress created Fannie Mae to accomplish a number of governmental objectives for the national housing market." *Id.* at 167-68. As a result, "[t]he real dispute in this case center[ed] on the final *Lebron* criterion: permanent government control." *Id.* at 168. The Court found that prong not satisfied because, although Fannie Mae was under Federal Housing Finance Agency conservatorship, the conservatorship was only temporary. *Id.* at 168-69. "[T]he government's indefinite but temporary control does not transform Fannie Mae into a government actor." *Id.* at 169. *Herron* is binding precedent, and the case clearly holds that Congress's initial creation of an entity does not determine its governmental status unless the government ***also*** exercises permanent control over appointment of the entity's directors.

*Herron* is no outlier. In *Hack v. President & Fellows of Yale College*, 237 F.3d 81 (2d Cir. 2000), the Second Circuit held that Yale was not a government entity. It acknowledged that "the first two [*Lebron*] factors are easily satisfied: the State of Connecticut created the corporate entity by special law, and higher education is a governmental objective." *Id.* at 84. But only two state officials served on Yale's nineteen-member governing board, and "[t]wo of nineteen board members is . . . a long way from control." *Id.* at 83-84. That absence of control precluded a finding that Yale was a government entity. *Id.* at 84.

15

Similarly, in *Hall v. American National Red Cross*, 86 F.3d 919 (9th Cir. 1996), the Ninth Circuit held that the Red Cross was a private entity. The court acknowledged that the first two *Lebron* prongs were satisfied because "Congress reincorporated the Red Cross in 1905" and the "congressional creation of the Red Cross furthered government objectives." *Id.* at 921. But the third *Lebron* prong was not met because only "[e]ight of the [Red Cross's] governors are appointed by the President of the United States; the remaining forty-two are selected by local Red Cross chapters and by the Board of Governors itself." *Id.* at 922; *see also Montilla v. Fed. Nat'l Mortg. Ass'n*, 999 F.3d 751, 759-62 (1st Cir. 2021) (holding that Fannie Mae and Freddie Mac were private entities even though "the first two prongs of the *Lebron* test are satisfied"); *cf. White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 191 n.5 (4th Cir. 2022) (not reaching issue because "all three prongs are satisfied here").

Applying those precedents, the MSRB is a private rather than government entity under *Lebron*. Whether or not the first two *Lebron* prongs are satisfied, the third clearly is not because the government has not "retain[ed] for itself permanent authority to appoint a majority of the [Board's] directors." 513 U.S. at 400. Rather, ***all*** of the Board's members are chosen by the Board itself through "an election . . . held under rules adopted by the Board." 15 U.S.C. § 78o-4(b)(1).

16

Because the government has no permanent authority over the Board's membership, the Board is not a government entity under *Lebron*.

That feature fundamentally distinguishes the MSRB from entities courts have deemed governmental. The Public Company Accounting Oversight Board, for example, is a government entity under *Lebron* because the SEC appoints **all** of its members in perpetuity. 15 U.S.C. § 7211(e)(4). No similar arrangement exists here. *See* Richard E. Brodsky, *"Something Called the 'Municipal Securities Rulemaking Board'": Unexamined Issues of Constitutionality*, 8 Am. U. Bus. L. Rev. 23, 47-50 (2019) (concluding that the "MSRB is clearly more appropriately deemed a private entity than Amtrak" and that "the facets considered by the Court regarding Amtrak point strongly to the MSRB's being deemed a private entity").

*Lebron*'s requirement of permanent government control makes sense. As the cases involving Yale and the Red Cross illustrate, legislatures often charter private organizations to accomplish desirable social goals without retaining permanent control over the entities. No one today would consider Yale or the Red Cross to be part of the government, even though those entities trace their origins to legislative charters granted many years ago. It would be absurd to suggest that the Red Cross must comply with the Appointments Clause and separation of powers, and have its Board of Governors nominated by the President and confirmed by the

Senate, merely because the Red Cross is a congressionally chartered nonprofit organization.  The same reasoning applies to the MSRB.

Nor does it matter that, for the first two years of its existence, the MSRB was run by board members appointed by the SEC.  *See* Pub. L. No. 94-29, sec. 13, § 15B(b)(1), 89 Stat. at 132.  *Lebron* requires that the government "retain[] for itself ***permanent*** authority to appoint a majority of the [entity's] directors."  513 U.S. at 400 (emphasis added).  *Lebron* relied on that permanence requirement to distinguish Amtrak from Conrail, for which the government retained only a temporary right to appoint board members that would expire "upon termination of a temporary financial interest."  *Id.* at 399.  This Court relied on that permanence requirement in *Herron* to hold that Fannie Mae was a private entity, even though the entity was under a federal conservatorship that had "no specific termination date" and has now lasted for ***fifteen years*** and counting.  861 F.3d at 164, 169.  Given those precedents, the fact that the SEC appointed the MSRB's initial members for a two-year period that ended more than four decades ago cannot possibly constitute "permanent" control.

*Lebron* requires, not merely a congressional charter, but permanent government authority to appoint an entity's directors.  Because that authority is absent here, the MSRB is a private entity under *Lebron*.

18

## II.  *BLOUNT* DID NOT HOLD THAT THE MSRB IS A GOVERNMENTAL ENTITY

In concluding that FINRA is a private entity, the district court contrasted FINRA with the MSRB.  The court observed that "neither an act of Congress nor the SEC created FINRA" and then described this Court's decision in *Blount v. SEC*, 61 F.3d 938 (D.C. Cir. 1995), as "holding that the Municipal Securities Rulemaking Board was a state actor because, *inter alia*, it was 'created by an act of Congress.'"  Dkt. 88 at 16.  That description of *Blount* was wrong.

*Blount* involved a challenge to the MSRB's Rule G-37, which sought to curb "pay to play" practices in the municipal securities industry.  61 F.3d at 939.  The petitioner did not challenge the structure of the MSRB itself.  Instead, he argued that Rule G-37 violated (among other things) his First Amendment right to make political contributions.  *Id.* at 940.  The Board urged that Rule G-37 was not subject to constitutional scrutiny for two separate reasons: "that [the MSRB] is a private organization and that Rule G-37 is a private rule."  *Id.* at 941.

The Court never decided the *first* issue.  To the contrary, the Court stated: "We ***put to one side*** the Board's questionable assertion that it is a purely private organization even though it was created by an act of Congress and directed by Congress to 'propose and adopt rules to effect the purposes of [the Exchange Act]' within specified constraints, §78o-4(b)(2)."  *Blount*, 61 F.3d at 941 (citing *Lebron*) (emphasis added).  Contrary to the district court's description, therefore, *Blount* did

19

not "hold[]" that the MSRB is "a state actor because, *inter alia*, it was 'created by an act of Congress.'" Dkt. 88 at 16.  And whatever "questions" may have existed about the Board's status at the time of *Blount* have since been resolved by *Herron*, which made clear that the mere fact that Congress created an entity does not make it part of the government unless the government ***also*** reserves permanent control over appointment of the entity's directors.  861 F.3d at 167-69.

To be sure, with respect to the ***second*** issue, *Blount* held that the MSRB's Rule G-37 constituted state action.  61 F.3d at 941.  Shifting focus to the specific rule at issue, the Court explained: "What is critical here is that MSRB Rule G-37 operates not as a private compact among brokers and dealers but as federal law." *Id.*  Under the Exchange Act, "a broker or dealer may not engage in interstate trade in municipal securities unless he registers."  *Id.* (citing 15 U.S.C. § 78o-4(a)(1)).  And "[i]f he violates an MSRB rule, he may be sanctioned by revocation or suspension of his license to deal in municipal securities."  *Id.* (citing 15 U.S.C. § 78o-4(c)(1)).  "As a government-enforced condition to any participation in a municipal securities career," the Court reasoned, "Rule G-37 constitutes government action of the purest sort."  *Id.*

*Blount* nowhere suggested that the mere fact that the MSRB's ***rule*** amounted to state action meant that the ***MSRB itself*** was part of the government.  The rule's status as state action may have meant that the petitioner could challenge the rule on

First Amendment grounds.  But the Court never suggested that this holding meant that the MSRB itself must comply with the Constitution's structural provisions applicable to government entities.   Again, whether the MSRB is part of the government is a separate question from whether a particular MSRB rule constitutes state action.  The district court's reasoning here conflates those two issues.

If anything, *Blount*'s careful separation of those two issues underscores the importance of distinguishing between ***state entities*** and ***state action***.  Whether an entity is part of the government is a separate question from whether a particular action by that entity is state action because of legal consequences the government has attached to the action.  The first of those two questions is the only one that matters to whether the structural provisions of the Constitution apply.  This Court thus need not consider whether any particular FINRA action (let alone any MSRB action) constitutes state action to conclude that plaintiffs' constitutional challenge to FINRA's structure should fail.

## **<u>CONCLUSION</u>**

The Court should affirm the district court's decision rejecting plaintiffs' structural constitutional claims against FINRA but should reject the district court's comments concerning the MSRB.

September 5, 2023                         Respectfully submitted,


                                                  /s/ Robert K. Kry
Jonathan E. Barbee                         Robert K. Kry
MOLOLAMKEN LLP                             MOLOLAMKEN LLP
430 Park Avenue                            600 New Hampshire Avenue, N.W.
New York, New York  10022                  Washington, D.C.  20037
(212) 607-8160                             (202) 556-2000
jbarbee@mololamken.com                     rkry@mololamken.com

*Attorneys for Amicus Curiae*
*Municipal Securities Rulemaking Board*

22

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Local Rule 29.1(c) because:

 X    this brief contains 4,838 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), or

____  this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

 X    this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font, or

____  this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

 /s/ Robert K. Kry  
Robert K. Kry

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on September 5, 2023, the foregoing brief was served on all parties through the Court's electronic filing system, and eight copies were dispatched to the Clerk's office by Federal Express.


    <u>/s/ Robert K. Kry</u>
    Robert K. Kry

**STATUTORY APPENDIX**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

15 U.S.C. § 78c (excerpt) ........................................................................ A-1

15 U.S.C. § 78o-3 (excerpt) .................................................................... A-2

15 U.S.C. § 78o-4 .................................................................................... A-3

15 U.S.C. § 78s (excerpts) ...................................................................... A-19

## 15 U.S.C. § 78c.  Definitions and application

## (a)  Definitions

When used in this chapter, unless the context otherwise requires—

* * * *

> (26)  The term "self-regulatory organization" means any national securities exchange, registered securities association, or registered clearing agency, or (solely for purposes of sections 78s(b), 78s(c), and 78w(b) of this title) the Municipal Securities Rulemaking Board established by section 78o-4 of this title.

* * * *

**15 U.S.C. § 78o-3.  Registered securities associations**

\* \* \* \*

**(b) Determinations by Commission requisite to registration of applicant as national securities association**

\* \* \* \*

An association of brokers and dealers shall not be registered as a national securities association unless the Commission determines that—

\* \* \* \*

>    (7)  The rules of the association provide that (subject to any rule or order of the Commission pursuant to section 78q(d) or 78s(g)(2) of this title) its members and persons associated with its members shall be appropriately disciplined for violation of any provision of this chapter, the rules or regulations thereunder, the rules of the Municipal Securities Rulemaking Board, or the rules of the association, by expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction.

\* \* \* \*

## 15 U.S.C. § 78o-4.  Municipal securities

### (a)  Registration of municipal securities dealers

(1)(A)  It shall be unlawful for any municipal securities dealer (other than one registered as a broker or dealer under section 78o of this title) to make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security unless such municipal securities dealer is registered in accordance with this subsection.

(B)  It shall be unlawful for a municipal advisor to provide advice to or on behalf of a municipal entity or obligated person with respect to municipal financial products or the issuance of municipal securities, or to undertake a solicitation of a municipal entity or obligated person, unless the municipal advisor is registered in accordance with this subsection.

(2)  A municipal securities dealer or municipal advisor may be registered by filing with the Commission an application for registration in such form and containing such information and documents concerning such municipal securities dealer or municipal advisor and any persons associated with such municipal securities dealer or municipal advisor as the Commission, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors.  Within forty-five days of the date of the filing of such application (or within such longer period as to which the applicant consents), the Commission shall—

(A)  by order grant registration, or

(B)  institute proceedings to determine whether registration should be denied. Such proceedings shall include notice of the grounds for denial under consideration and opportunity for hearing and shall be concluded within one hundred twenty days of the date of the filing of the application for registration. At the conclusion of such proceedings the Commission, by order, shall grant or deny such registration.  The Commission may extend the time for the conclusion of such proceedings for up to ninety days if it finds good cause for such extension and publishes its reasons for so finding or for such longer period as to which the applicant consents.

The Commission shall grant the registration of a municipal securities dealer or municipal advisor if the Commission finds that the requirements of this section are

satisfied.  The Commission shall deny such registration if it does not make such a finding or if it finds that if the applicant were so registered, its registration would be subject to suspension or revocation under subsection (c) of this section.

(3)  Any provision of this chapter (other than section 78e of this title or paragraph (1) of this subsection) which prohibits any act, practice, or course of business if the mails or any means or instrumentality of interstate commerce is used in connection therewith shall also prohibit any such act, practice, or course of business by any registered municipal securities dealer or municipal advisor or any person acting on behalf of such municipal securities dealer or municipal advisor, irrespective of any use of the mails or any means or instrumentality of interstate commerce in connection therewith.

(4)  The Commission, by rule or order, upon its own motion or upon application, may conditionally or unconditionally exempt any broker, dealer, municipal securities dealer, or municipal advisor, or class of brokers, dealers, municipal securities dealers, or municipal advisors from any provision of this section or the rules or regulations thereunder, if the Commission finds that such exemption is consistent with the public interest, the protection of investors, and the purposes of this section.

(5) No municipal advisor shall make use of the mails or any means or instrumentality of interstate commerce to provide advice to or on behalf of a municipal entity or obligated person with respect to municipal financial products, the issuance of municipal securities, or to undertake a solicitation of a municipal entity or obligated person, in connection with which such municipal advisor engages in any fraudulent, deceptive, or manipulative act or practice.

**(b)  Municipal Securities Rulemaking Board; rules and regulations**

(1)  The Municipal Securities Rulemaking Board shall be composed of 15 members, or such other number of members as specified by rules of the Board pursuant to paragraph (2)(B), which shall perform the duties set forth in this section.  The members of the Board shall serve as members for a term of 3 years or for such other terms as specified by rules of the Board pursuant to paragraph (2)(B), and shall consist of (A) 8 individuals who are independent of any municipal securities broker, municipal securities dealer, or municipal advisor, at least 1 of whom shall be representative of institutional or retail investors in municipal securities, at least 1 of whom shall be representative of municipal entities, and at least 1 of whom shall be a member of the public with knowledge of or experience in the municipal industry

(which members are hereinafter referred to as "public representatives"); and (B) 7 individuals who are associated with a broker, dealer, municipal securities dealer, or municipal advisor, including at least 1 individual who is associated with and representative of brokers, dealers, or municipal securities dealers that are not banks or subsidiaries or departments or divisions of banks (which members are hereinafter referred to as "broker-dealer representatives"), at least 1 individual who is associated with and representative of municipal securities dealers which are banks or subsidiaries or departments or divisions of banks (which members are hereinafter referred to as "bank representatives"), and at least 1 individual who is associated with a municipal advisor (which members are hereinafter referred to as "advisor representatives" and, together with the broker-dealer representatives and the bank representatives, are referred to as "regulated representatives"). Each member of the board shall be knowledgeable of matters related to the municipal securities markets. Prior to the expiration of the terms of office of the members of the Board, an election shall be held under rules adopted by the Board (pursuant to subsection (b)(2)(B) of this section) of the members to succeed such members.

(2) The Board shall propose and adopt rules to effect the purposes of this chapter with respect to transactions in municipal securities effected by brokers, dealers, and municipal securities dealers and advice provided to or on behalf of municipal entities or obligated persons by brokers, dealers, municipal securities dealers, and municipal advisors with respect to municipal financial products, the issuance of municipal securities, and solicitations of municipal entities or obligated persons undertaken by brokers, dealers, municipal securities dealers, and municipal advisors. The rules of the Board, as a minimum, shall:

(A) provide that no municipal securities broker or municipal securities dealer shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any municipal security, and no broker, dealer, municipal securities dealer, or municipal advisor shall provide advice to or on behalf of a municipal entity or obligated person with respect to municipal financial products or the issuance of municipal securities, unless such municipal securities broker or municipal securities dealer meets such standards of operational capability and such municipal securities broker or municipal securities dealer and every natural person associated with such municipal securities broker or municipal securities dealer meet such standards of training, experience, competence, and such other qualifications as the Board finds necessary or appropriate in the public interest or for the protection of investors and municipal entities or obligated persons. In connection with the definition and application of such standards the Board may—

(i) appropriately classify municipal securities brokers, municipal securities dealers, and municipal advisors (taking into account relevant matters, including types of business done, nature of securities other than municipal securities sold, and character of business organization), and persons associated with municipal securities brokers, municipal securities dealers, and municipal advisors;

(ii) specify that all or any portion of such standards shall be applicable to any such class; and

(iii) require persons in any such class to pass tests administered in accordance with subsection (c)(7) of this section.

(B) establish fair procedures for the nomination and election of members of the Board and assure fair representation in such nominations and elections of public representatives, broker dealer representatives, bank representatives, and advisor representatives. Such rules—

(i) shall provide that the number of public representatives of the Board shall at all times exceed the total number of regulated representatives and that the membership shall at all times be as evenly divided in number as possible between public representatives and regulated representatives;

(ii) shall specify the length or lengths of terms members shall serve;

(iii) may increase the number of members which shall constitute the whole Board, provided that such number is an odd number; and

(iv) shall establish requirements regarding the independence of public representatives.

(C) be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in municipal securities and municipal financial products, to remove impediments to and perfect the mechanism of a free and open market in municipal securities and municipal financial products, and, in general, to protect investors, municipal

entities, obligated persons, and the public interest; and not be designed to permit unfair discrimination among customers, municipal entities, obligated persons, municipal securities brokers, municipal securities dealers, or municipal advisors, to fix minimum profits, to impose any schedule or fix rates of commissions, allowances, discounts, or other fees to be charged by municipal securities brokers, municipal securities dealers, or municipal advisors, to regulate by virtue of any authority conferred by this chapter matters not related to the purposes of this chapter or the administration of the Board, or to impose any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter.

(D)  if the Board deems appropriate, provide for the arbitration of claims, disputes, and controversies relating to transactions in municipal securities and advice concerning municipal financial products: *Provided, however*, that no person other than a municipal securities broker, municipal securities dealer, municipal advisor, or person associated with such a municipal securities broker, municipal securities dealer, or municipal advisor may be compelled to submit to such arbitration except at his instance and in accordance with section 78cc of this title.

(E)  provide for the periodic examination in accordance with subsection (c)(7) of this section of municipal securities brokers, municipal securities dealers, and municipal advisors to determine compliance with applicable provisions of this chapter, the rules and regulations thereunder, and the rules of the Board. Such rules shall specify the minimum scope and frequency of such examinations and shall be designed to avoid unnecessary regulatory duplication or undue regulatory burdens for any such municipal securities broker, municipal securities dealer, or municipal advisor.

(F)  include provisions governing the form and content of quotations relating to municipal securities which may be distributed or published by any municipal securities broker, municipal securities dealer, or person associated with such a municipal securities broker or municipal securities dealer, and the persons to whom such quotations may be supplied. Such rules relating to quotations shall be designed to produce fair and informative quotations, to prevent fictitious or misleading quotations, and to promote orderly procedures for collecting, distributing, and publishing quotations.

(G)  prescribe records to be made and kept by municipal securities brokers, municipal securities dealers, and municipal advisors and the periods for which such records shall be preserved.

(H)  define the term "separately identifiable department or division", as that term is used in section 78c(a)(30) of this title, in accordance with specified and appropriate standards to assure that a bank is not deemed to be engaged in the business of buying and selling municipal securities through a separately identifiable department or division unless such department or division is organized and administered so as to permit independent examination and enforcement of applicable provisions of this chapter, the rules and regulations thereunder, and the rules of the Board.  A separately identifiable department or division of a bank may be engaged in activities other than those relating to municipal securities.

(I)  provide for the operation and administration of the Board, including the selection of a Chairman from among the members of the Board, the compensation of the members of the Board, and the appointment and compensation of such employees, attorneys, and consultants as may be necessary or appropriate to carry out the Board's functions under this section.

(J)  provide that each municipal securities broker, municipal securities dealer, and municipal advisor shall pay to the Board such reasonable fees and charges as may be necessary or appropriate to defray the costs and expenses of operating and administering the Board.  Such rules shall specify the amount of such fees and charges, which may include charges for failure to submit to the Board, or to any information system operated by the Board, within the prescribed timeframes, any items of information or documents required to be submitted under any rule issued by the Board.

(K)  establish the terms and conditions under which any broker, dealer, or municipal securities dealer may sell, or prohibit any broker, dealer, or municipal securities dealer from selling, any part of a new issue of municipal securities to a related account of a broker, dealer, or municipal securities dealer during the underwriting period.

(L)  with respect to municipal advisors—

(i)  prescribe means reasonably designed to prevent acts, practices, and courses of business as are not consistent with a municipal advisor's fiduciary duty to its clients;

(ii)  provide continuing education requirements for municipal advisors;

(iii)  provide professional standards; and

(iv)  not impose a regulatory burden on small municipal advisors that is not necessary or appropriate in the public interest and for the protection of investors, municipal entities, and obligated persons, provided that there is robust protection of investors against fraud.

(3)  The Board, in conjunction with or on behalf of any Federal financial regulator or self-regulatory organization, may—

(A)  establish information systems; and

(B)  assess such reasonable fees and charges for the submission of information to, or the receipt of information from, such systems from any persons which systems may be developed for the purposes of serving as a repository of information from municipal market participants or otherwise in furtherance of the purposes of the Board, a Federal financial regulator, or a self-regulatory organization, except that the Board—

(i)  may not charge a fee to municipal entities or obligated persons to submit documents or other information to the Board or charge a fee to any person to obtain, directly from the Internet site of the Board, documents or information submitted by municipal entities, obligated persons, brokers, dealers, municipal securities dealers, or municipal advisors, including documents submitted under the rules of the Board or the Commission; and

(ii)  shall not be prohibited from charging commercially reasonable fees for automated subscription-based feeds or similar services, or for charging for other data or document-based services customized upon request of any person, made available to commercial enterprises, municipal securities market professionals, or the general public, whether delivered through the Internet or any other means, that contain

all or part of the documents or information, subject to approval of the fees by the Commission under section 78s(b) of this title.

(4) The Board may provide guidance and assistance in the enforcement of, and examination for, compliance with the rules of the Board to the Commission, a registered securities association under section 78o-3 of this title, or any other appropriate regulatory agency, as applicable.

(5) The Board, the Commission, and a registered securities association under section 78o-3 of this title, or the designees of the Board, the Commission, or such association, shall meet not less frequently than 2 times a year—

    (A) to describe the work of the Board, the Commission, and the registered securities association involving the regulation of municipal securities; and

    (B) to share information about—

        (i) the interpretation of the Board, the Commission, and the registered securities association of Board rules; and

        (ii) examination and enforcement of compliance with Board rules.

(7) Nothing in this section shall be construed to impair or limit the power of the Commission under this chapter.

(8)(A) The Commission shall adopt data standards for information submitted to the Board.

(B) Any data standards adopted under subparagraph (A) shall incorporate, and ensure compatibility with (to the extent feasible), all applicable data standards established in the rules promulgated under section 5334 of Title 12, including, to the extent practicable, by having the characteristics described in clauses (i) through (vi) of subsection (c)(1)(B) of such section 5334 of Title 12.

(C) The Commission shall consult market participants in establishing data standards under subparagraph (A).

(D) Nothing in this paragraph may be construed to affect the operation of paragraph (1) or (2) of subsection (d).

**(c) Discipline of municipal securities dealers; censure; suspension or revocation of registration; other sanctions; investigations**

(1)  No broker, dealer, or municipal securities dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security, and no broker, dealer, municipal securities dealer, or municipal advisor shall make use of the mails or any means or instrumentality of interstate commerce to provide advice to or on behalf of a municipal entity or obligated person with respect to municipal financial products, the issuance of municipal securities, or to undertake a solicitation of a municipal entity or obligated person, in contravention of any rule of the Board.  A municipal advisor and any person associated with such municipal advisor shall be deemed to have a fiduciary duty to any municipal entity for whom such municipal advisor acts as a municipal advisor, and no municipal advisor may engage in any act, practice, or course of business which is not consistent with a municipal advisor's fiduciary duty or that is in contravention of any rule of the Board.

(2)  The Commission, by order, shall censure, place limitations on the activities, functions, or operations, suspend for a period not exceeding twelve months, or revoke the registration of any municipal securities dealer or municipal advisor, if it finds, on the record after notice and opportunity for hearing, that such censure, placing of limitations, denial, suspension, or revocation, is in the public interest and that such municipal securities dealer or municipal advisor has committed or omitted any act, or is subject to an order or finding, enumerated in subparagraph (A), (D), (E), (H), or (G) of paragraph (4) of section 78o(b) of this title, has been convicted of any offense specified in subparagraph (B) of such paragraph (4) within ten years of the commencement of the proceedings under this paragraph, or is enjoined from any action, conduct, or practice specified in subparagraph (C) of such paragraph (4).

(3)  Pending final determination whether any registration under this section shall be revoked, the Commission, by order, may suspend such registration, if such suspension appears to the Commission, after notice and opportunity for hearing, to be necessary or appropriate in the public interest or for the protection of investors or municipal entities or obligated person.  Any registered municipal securities dealer or municipal advisor may, upon such terms and conditions as the Commission may deem necessary in the public interest or for the protection of investors or municipal entities or obligated person, withdraw from registration by filing a written notice of withdrawal with the Commission.  If the Commission finds that any registered municipal securities dealer or municipal advisor is no longer in existence or has

ceased to do business as a municipal securities dealer or municipal advisor, the Commission, by order, shall cancel the registration of such municipal securities dealer or municipal advisor.

(4)  The Commission, by order, shall censure or place limitations on the activities or functions of any person associated, seeking to become associated, or, at the time of the alleged misconduct, associated or seeking to become associated with a municipal securities dealer, or suspend for a period not exceeding 12 months or bar any such person from being associated with a broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization, if the Commission finds, on the record after notice and opportunity for hearing, that such censure, placing of limitations, suspension, or bar is in the public interest and that such person has committed any act, or is subject to an order or finding, enumerated in subparagraph (A), (D), (E), (H), or (G) of paragraph (4) of section 78o(b) of this title, has been convicted of any offense specified in subparagraph (B) of such paragraph (4) within 10 years of the commencement of the proceedings under this paragraph, or is enjoined from any action, conduct, or practice specified in subparagraph (C) of such paragraph (4).  It shall be unlawful for any person as to whom an order entered pursuant to this paragraph or paragraph (5) of this subsection suspending or barring him from being associated with a municipal securities dealer is in effect willfully to become, or to be, associated with a municipal securities dealer without the consent of the Commission, and it shall be unlawful for any municipal securities dealer to permit such a person to become, or remain, a person associated with him without the consent of the Commission, if such municipal securities dealer knew, or, in the exercise of reasonable care should have known, of such order.

(5)  With respect to any municipal securities dealer for which the Commission is not the appropriate regulatory agency, the appropriate regulatory agency for such municipal securities dealer may sanction any such municipal securities dealer in the manner and for the reasons specified in paragraph (2) of this subsection and any person associated with such municipal securities dealer in the manner and for the reasons specified in paragraph (4) of this subsection.  In addition, such appropriate regulatory agency may, in accordance with section 1818 of Title 12, enforce compliance by such municipal securities dealer or any person associated with such municipal securities dealer with the provisions of this section, section 78q of this title, the rules of the Board, and the rules of the Commission pertaining to municipal securities dealers, persons associated with municipal securities dealers, and transactions in municipal securities.  For purposes of the preceding sentence, any violation of any such provision shall constitute adequate basis for the issuance of

any order under section 1818(b) or 1818(c) of Title 12, and the customers of any such municipal securities dealer shall be deemed to be "depositors" as that term is used in section 1818(c) of Title 12. Nothing in this paragraph shall be construed to affect in any way the powers of such appropriate regulatory agency to proceed against such municipal securities dealer under any other provision of law.

(6)(A) The Commission, prior to the entry of an order of investigation, or commencement of any proceedings, against any municipal securities dealer, or person associated with any municipal securities dealer, for which the Commission is not the appropriate regulatory agency, for violation of any provision of this section, section 78o(c)(1) or 78o(c)(2) of this title, any rule or regulation under any such section, or any rule of the Board, shall (i) give notice to the appropriate regulatory agency for such municipal securities dealer of the identity of such municipal securities dealer or person associated with such municipal securities dealer, the nature of and basis for such proposed action, and whether the Commission is seeking a monetary penalty against such municipal securities dealer or such associated person pursuant to section 78u-2 of this title; and (ii) consult with such appropriate regulatory agency concerning the effect of such proposed action on sound banking practices and the feasibility and desirability of coordinating such action with any proceeding or proposed proceeding by such appropriate regulatory agency against such municipal securities dealer or associated person.

(B) The appropriate regulatory agency for a municipal securities dealer (if other than the Commission), prior to the entry of an order of investigation, or commencement of any proceedings, against such municipal securities dealer or person associated with such municipal securities dealer, for violation of any provision of this section, the rules of the Board, or the rules or regulations of the Commission pertaining to municipal securities dealers, persons associated with municipal securities dealers, or transactions in municipal securities shall (i) give notice to the Commission of the identity of such municipal securities dealer or person associated with such municipal securities dealer and the nature of and basis for such proposed action and (ii) consult with the Commission concerning the effect of such proposed action on the protection of investors or municipal entities or obligated person and the feasibility and desirability of coordinating such action with any proceeding or proposed proceeding by the Commission against such municipal securities dealer or associated person.

(C) Nothing in this paragraph shall be construed to impair or limit (other than by the requirement of prior consultation) the power of the Commission or the appropriate regulatory agency for a municipal securities dealer to initiate any action

A-13

of a class described in this paragraph or to affect in any way the power of the Commission or such appropriate regulatory agency to initiate any other action pursuant to this chapter or any other provision of law.

(7)(A)  Tests required pursuant to subsection (b)(2)(A)(iii) of this section shall be administered by or on behalf of and periodic examinations pursuant to subsection (b)(2)(E) of this section shall be conducted by—

> (i) a registered securities association, in the case of municipal securities brokers and municipal securities dealers who are members of such association;

> (ii) the appropriate regulatory agency for any municipal securities broker or municipal securities dealer, in the case of all other municipal securities brokers and municipal securities dealers; and

> (iii) the Commission, or its designee, in the case of municipal advisors.

(B)  A registered securities association shall make a report of any examination conducted pursuant to subsection (b)(2)(E) of this section and promptly furnish the Commission a copy thereof and any data supplied to it in connection with such examination.  Subject to such limitations as the Commission, by rule, determines to be necessary or appropriate in the public interest or for the protection of investors or municipal entities or obligated person, the Commission shall, on request, make available to the Board a copy of any report of an examination of a municipal securities broker or municipal securities dealer made by or furnished to the Commission pursuant to this paragraph or section 78q(c)(3) of this title.

(8) The Commission is authorized, by order, if in its opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise, in furtherance of the purposes of this chapter, to remove from office or censure any person who is, or at the time of the alleged violation or abuse was, a member or employee of the Board, who, the Commission finds, on the record after notice and opportunity for hearing, has willfully (A) violated any provision of this chapter, the rules and regulations thereunder, or the rules of the Board or (B) abused his authority.

(9)(A)  Fines collected by the Commission for violations of the rules of the Board shall be equally divided between the Commission and the Board.

(B)  Fines collected by a registered securities association under section 78o-3(b)(7) of this title with respect to violations of the rules of the Board shall be accounted for by such registered securities association separately from other fines collected under section 78o-3(b)(7) of this title and shall be allocated between such registered securities association and the Board, and such allocation shall require the registered securities association to pay to the Board ⅓ of all fines collected by the registered securities association reasonably allocable to violations of the rules of the Board, or such other portion of such fines as may be directed by the Commission upon agreement between the registered securities association and the Board.

### (d)  Issuance of municipal securities

(1)  Neither the Commission nor the Board is authorized under this chapter, by rule or regulation, to require any issuer of municipal securities, directly or indirectly through a purchaser or prospective purchaser of securities from the issuer, to file with the Commission or the Board prior to the sale of such securities by the issuer any application, report, or document in connection with the issuance, sale, or distribution of such securities.

(2)  The Board is not authorized under this chapter to require any issuer of municipal securities, directly or indirectly through a municipal securities broker, municipal securities dealer, municipal advisor, or otherwise, to furnish to the Board or to a purchaser or a prospective purchaser of such securities any application, report, document, or information with respect to such issuer: *Provided, however*, That the Board may require municipal securities brokers and municipal securities dealers or municipal advisors to furnish to the Board or purchasers or prospective purchasers of municipal securities applications, reports, documents, and information with respect to the issuer thereof which is generally available from a source other than such issuer.  Nothing in this paragraph shall be construed to impair or limit the power of the Commission under any provision of this chapter.

### (e) Definitions

For purposes of this section—

(1)  the term "Board" means the Municipal Securities Rulemaking Board established under subsection (b)(1);

(2)  the term "guaranteed investment contract" includes any investment that has specified withdrawal or reinvestment provisions and a specifically negotiated or bid

interest rate, and also includes any agreement to supply investments on 2 or more future dates, such as a forward supply contract;

(3)  the term "investment strategies" includes plans or programs for the investment of the proceeds of municipal securities that are not municipal derivatives, guaranteed investment contracts, and the recommendation of and brokerage of municipal escrow investments;

(4)  the term "municipal advisor"—

    (A)  means a person (who is not a municipal entity or an employee of a municipal entity) that—

        (i)  provides advice to or on behalf of a municipal entity or obligated person with respect to municipal financial products or the issuance of municipal securities, including advice with respect to the structure, timing, terms, and other similar matters concerning such financial products or issues; or

        (ii)  undertakes a solicitation of a municipal entity;

    (B)  includes financial advisors, guaranteed investment contract brokers, third-party marketers, placement agents, solicitors, finders, and swap advisors, if such persons are described in any of clauses (i) through (iii) of subparagraph (A); and

    (C)  does not include a broker, dealer, or municipal securities dealer serving as an underwriter (as defined in section 77b(a)(11) of this title), any investment adviser registered under the Investment Advisers Act of 1940, or persons associated with such investment advisers who are providing investment advice, any commodity trading advisor registered under the Commodity Exchange Act or persons associated with a commodity trading advisor who are providing advice related to swaps, attorneys offering legal advice or providing services that are of a traditional legal nature, or engineers providing engineering advice;

(5)  the term "municipal financial product" means municipal derivatives, guaranteed investment contracts, and investment strategies;

(6)  the term "rules of the Board" means the rules proposed and adopted by the Board under subsection (b)(2);

(7)  the term "person associated with a municipal advisor" or "associated person of an advisor" means—

> (A) any partner, officer, director, or branch manager of such municipal advisor (or any person occupying a similar status or performing similar functions);

> (B) any other employee of such municipal advisor who is engaged in the management, direction, supervision, or performance of any activities relating to the provision of advice to or on behalf of a municipal entity or obligated person with respect to municipal financial products or the issuance of municipal securities; and

> (C) any person directly or indirectly controlling, controlled by, or under common control with such municipal advisor;

(8)  the term "municipal entity" means any State, political subdivision of a State, or municipal corporate instrumentality of a State, including—

> (A) any agency, authority, or instrumentality of the State, political subdivision, or municipal corporate instrumentality;

> (B)  any plan, program, or pool of assets sponsored or established by the State, political subdivision, or municipal corporate instrumentality or any agency, authority, or instrumentality thereof; and

> (C)  any other issuer of municipal securities;

(9)  the term "solicitation of a municipal entity or obligated person" means a direct or indirect communication with a municipal entity or obligated person made by a person, for direct or indirect compensation, on behalf of a broker, dealer, municipal securities dealer, municipal advisor, or investment adviser (as defined in section 202 of the Investment Advisers Act of 1940) that does not control, is not controlled by, or is not under common control with the person undertaking such solicitation for the purpose of obtaining or retaining an engagement by a municipal entity or obligated person of a broker, dealer, municipal securities dealer, or municipal advisor for or in connection with municipal financial products, the issuance of municipal securities,

or of an investment adviser to provide investment advisory services to or on behalf
of a municipal entity; and

(10)  the term "obligated person" means any person, including an issuer of municipal
securities, who is either generally or through an enterprise, fund, or account of such
person, committed by contract or other arrangement to support the payment of all or
part of the obligations on the municipal securities to be sold in an offering of
municipal securities.

### 15 U.S.C. §78s.  Registration, responsibilities, and oversight of self-regulatory organizations

\* \* \* \*

### (b)  Proposed rule changes; notice; proceedings

(1)  Each self-regulatory organization shall file with the Commission, in accordance with such rules as the Commission may prescribe, copies of any proposed rule or any proposed change in, addition to, or deletion from the rules of such self-regulatory organization (hereinafter in this subsection collectively referred to as a "proposed rule change") accompanied by a concise general statement of the basis and purpose of such proposed rule change.  The Commission shall, as soon as practicable after the date of the filing of any proposed rule change, publish notice thereof together with the terms of substance of the proposed rule change or a description of the subjects and issues involved.  The Commission shall give interested persons an opportunity to submit written data, views, and arguments concerning such proposed rule change.  No proposed rule change shall take effect unless approved by the Commission or otherwise permitted in accordance with the provisions of this subsection.

### (2)  Approval process

#### (A)  Approval process established

##### (i)  In general

Except as provided in clause (ii), not later than 45 days after the date of publication of a proposed rule change under paragraph (1), the Commission shall—

(I)  by order, approve or disapprove the proposed rule change; or

(II)  institute proceedings under subparagraph (B) to determine whether the proposed rule change should be disapproved.

##### (ii)  Extension of time period

The Commission may extend the period established under clause (i) by not more than an additional 45 days, if—

A-19

(I) the Commission determines that a longer period is appropriate and publishes the reasons for such determination; or

(II) the self-regulatory organization that filed the proposed rule change consents to the longer period.

**(B) Proceedings**

**(i) Notice and hearing**

If the Commission does not approve or disapprove a proposed rule change under subparagraph (A), the Commission shall provide to the self-regulatory organization that filed the proposed rule change—

(I) notice of the grounds for disapproval under consideration; and

(II) opportunity for hearing, to be concluded not later than 180 days after the date of publication of notice of the filing of the proposed rule change.

**(ii) Order of approval or disapproval**

**(I) In general**

Except as provided in subclause (II), not later than 180 days after the date of publication under paragraph (1), the Commission shall issue an order approving or disapproving the proposed rule change.

**(II) Extension of time period**

The Commission may extend the period for issuance under clause (I) by not more than 60 days, if—

(aa) the Commission determines that a longer period is appropriate and publishes the reasons for such determination; or

(bb) the self-regulatory organization that filed the proposed rule change consents to the longer period.

**(C)  Standards for approval and disapproval**

**(i)  Approval**

The Commission shall approve a proposed rule change of a self-regulatory organization if it finds that such proposed rule change is consistent with the requirements of this chapter and the rules and regulations issued under this chapter that are applicable to such organization.

**(ii)  Disapproval**

The Commission shall disapprove a proposed rule change of a self-regulatory organization if it does not make a finding described in clause (i).

**(iii)  Time for approval**

The Commission may not approve a proposed rule change earlier than 30 days after the date of publication under paragraph (1), unless the Commission finds good cause for so doing and publishes the reason for the finding.

**(D)  Result of failure to institute or conclude proceedings**

A proposed rule change shall be deemed to have been approved by the Commission, if—

(i)  the Commission does not approve or disapprove the proposed rule change or begin proceedings under subparagraph (B) within the period described in subparagraph (A); or

(ii)  the Commission does not issue an order approving or disapproving the proposed rule change under subparagraph (B) within the period described in subparagraph (B)(ii).

**(E)  Publication date based on Federal Register publishing**

For purposes of this paragraph, if, after filing a proposed rule change with the Commission pursuant to paragraph (1), a self-regulatory organization publishes a

notice of the filing of such proposed rule change, together with the substantive terms of such proposed rule change, on a publicly accessible website, the Commission shall thereafter send the notice to the Federal Register for publication thereof under paragraph (1) within 15 days of the date on which such website publication is made. If the Commission fails to send the notice for publication thereof within such 15 day period, then the date of publication shall be deemed to be the date on which such website publication was made.

**(F) Rulemaking**

### (i) In general

Not later than 180 days after July 21, 2010, after consultation with other regulatory agencies, the Commission shall promulgate rules setting forth the procedural requirements of the proceedings required under this paragraph.

### (ii) Notice and comment not required

The rules promulgated by the Commission under clause (i) are not required to include republication of proposed rule changes or solicitation of public comment.

(3)(A) Notwithstanding the provisions of paragraph (2) of this subsection, a proposed rule change shall take effect upon filing with the Commission if designated by the self-regulatory organization as (i) constituting a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule of the self-regulatory organization, (ii) establishing or changing a due, fee, or other charge imposed by the self-regulatory organization on any person, whether or not the person is a member of the self-regulatory organization, or (iii) concerned solely with the administration of the self-regulatory organization or other matters which the Commission, by rule, consistent with the public interest and the purposes of this subsection, may specify as without the provisions of such paragraph (2).

(B) Notwithstanding any other provision of this subsection, a proposed rule change may be put into effect summarily if it appears to the Commission that such action is necessary for the protection of investors, the maintenance of fair and orderly markets, or the safeguarding of securities or funds. Any proposed rule change so put into effect shall be filed promptly thereafter in accordance with the provisions of paragraph (1) of this subsection.

(C)  Any proposed rule change of a self-regulatory organization which has taken effect pursuant to subparagraph (A) or (B) of this paragraph may be enforced by such organization to the extent it is not inconsistent with the provisions of this chapter, the rules and regulations thereunder, and applicable Federal and State law. At any time within the 60-day period beginning on the date of filing of such a proposed rule change in accordance with the provisions of paragraph (1), the Commission summarily may temporarily suspend the change in the rules of the self-regulatory organization made thereby, if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter.  If the Commission takes such action, the Commission shall institute proceedings under paragraph (2)(B) to determine whether the proposed rule should be approved or disapproved.  Commission action pursuant to this subparagraph shall not affect the validity or force of the rule change during the period it was in effect and shall not be reviewable under section 78y of this title nor deemed to be "final agency action" for purposes of section 704 of Title 5.

*  *  *  *

### (c)  Amendment by Commission of rules of self-regulatory organizations

The Commission, by rule, may abrogate, add to, and delete from (hereinafter in this subsection collectively referred to as "amend") the rules of a self-regulatory organization (other than a registered clearing agency) as the Commission deems necessary or appropriate to insure the fair administration of the self-regulatory organization, to conform its rules to requirements of this chapter and the rules and regulations thereunder applicable to such organization, or otherwise in furtherance of the purposes of this chapter, in the following manner:

(1)  The Commission shall notify the self-regulatory organization and publish notice of the proposed rulemaking in the Federal Register.  The notice shall include the text of the proposed amendment to the rules of the self-regulatory organization and a statement of the Commission's reasons, including any pertinent facts, for commencing such proposed rulemaking.

(2)  The Commission shall give interested persons an opportunity for the oral presentation of data, views, and arguments, in addition to an opportunity to make written submissions.  A transcript shall be kept of any oral presentation.

(3)  A rule adopted pursuant to this subsection shall incorporate the text of the amendment to the rules of the self-regulatory organization and a statement of the Commission's basis for and purpose in so amending such rules.  This statement shall include an identification of any facts on which the Commission considers its determination so to amend the rules of the self-regulatory agency to be based, including the reasons for the Commission's conclusions as to any of such facts which were disputed in the rulemaking.

(4)(A)  Except as provided in paragraphs (1) through (3) of this subsection, rulemaking under this subsection shall be in accordance with the procedures specified in section 553 of Title 5 for rulemaking not on the record.

(B) Nothing in this subsection shall be construed to impair or limit the Commission's power to make, or to modify or alter the procedures the Commission may follow in making, rules and regulations pursuant to any other authority under this chapter.

(C)  Any amendment to the rules of a self-regulatory organization made by the Commission pursuant to this subsection shall be considered for all purposes of this chapter to be part of the rules of such self-regulatory organization and shall not be considered to be a rule of the Commission.

(5)  With respect to rules described in subsection (b)(5), the Commission shall consult with and consider the views of the Secretary of the Treasury before abrogating, adding to, and deleting from such rules, except where the Commission determines that an emergency exists requiring expeditious or summary action and publishes its reasons therefor.

\*  \*  \*  \*