ORAL ARGUMENT HELD ON FEBRUARY 8, 2024
No. 23-5129

# In The United States Court Of Appeals
# For The District Of Columbia Circuit

-------------------------------- --------------------------------

ALPINE SECURITIES CORPORATION,
*Plaintiff-Appellant*,

SCOTTSDALE CAPITAL ADVISORS CORPORATION,
*Plaintiff*,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,
*Defendant-Appellee*,

UNITED STATES OF AMERICA,
*Intervenor for Defendant-Appellee*.

-----------------------------------------------------------------

## PLAINTIFF-APPELLANT ALPINE'S MOTION TO STAY ISSUANCE OF THE MANDATE PENDING THE FILING AND DISPOSITION OF A PETITION FOR A WRIT OF CERTIORARI

-----------------------------------------------------------------

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA No. 1:23-cv-1506-BAH

-----------------------------------------------------------------

Kenneth G. Turkel
David A. Hayes
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, FL 33602
Phone: (813) 834-9191
kturkel@tcb-law.com

Maranda E. Fritz
MARANDA E. FRITZ PC
521 Fifth Avenue 17th Floor
New York, New York 10175
Phone: (646) 584-8231
maranda@fritzpc.com

David H. Thompson
Brian W. Barnes
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
Phone: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Counsel for Plaintiff-Appellant Alpine Securities Corporation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

GLOSSARY OF ABBREVIATIONS ...................................................... iii

INTRODUCTION ......................................................................................1

BACKGROUND ........................................................................................5

ARGUMENT ............................................................................................10

I.      Alpine's Petition for Certiorari Will Raise Substantial Questions of Law. ..11

II.     Good Cause Exists for a Stay. .......................................................14

CONCLUSION .........................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Alpine Sec. Corp. v. FINRA*,
   121 F.4th 1314 (D.C. Cir. 2024)..............................................2, 9, 10, 12, 13

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023)...............................................................1, 2, 7, 8, 9, 11

*FCC v. Consumers' Rsch.*,
   No. 24-354 (cert. granted Nov. 22, 2024) ..............................................3

*Free Enterprise Fund v. PCAOB*,
   561 U.S. 477 (2010)...............................................................................7

*John Doe Co. v. CFPB*,
   849 F.3d 1129 (D.C. Cir. 2017).........................................................12

*Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*,
   No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023).......................14

*Lucia v. SEC*,
   585 U.S. 237 (2018)...............................................................................7

*Springsteen-Abbott v. SEC*,
   989 F.3d 4 (D.C. Cir. 2021)..................................................................6

*Tennessee v. Dep't of Educ.*,
   104 F.4th 577 (6th Cir. 2024)...........................................................14

**Codes**

Fed. R. App. P. 41(d)(1) ..................................................................1, 10, 11

**Other Authorities**

Cert. Pet., *FTC v. Nat'l Horsemen's Benevolent & Protective Ass'n*,
   No. 24-429 (U.S. Oct. 16, 2024) .......................................................4

Cert. Pet., *Horseracing Integrity & Safety Auth., Inc. v. Nat'l Horsemen's
   Benevolent & Protective Ass'n*, No. 24-433 (U.S. Oct. 15, 2024).................4

Cert. Pet., *Oklahoma v. United States*, No. 23-402 (U.S. Oct. 13, 2024)..................4

Cert. Pet., *Walmsley v. FTC*, No. 24-420 (U.S. Oct. 10, 2024)..................4

Resp. to Pet. for Reh'g, *Oklahoma*, No. 23-402 (U.S. Nov. 6, 2024) ......................4

## GLOSSARY OF ABBREVIATIONS

FINRA: Financial Industry Regulatory Authority

FTC: Federal Trade Commission

SEC: Securities and Exchange Commission

ALJ: Administrative Law Judge

HISA: Horseracing Integrity and Safety Authority

PCAOB: Public Company Accounting Oversight Board

NLRB: National Labor Relations Board

CFPB: Consumer Financial Protection Bureau

FCC: Federal Communications Commission

## INTRODUCTION

Alpine respectfully moves this Court to stay its mandate pending the filing and disposition of Alpine's petition for a writ of certiorari in this case.

A stay of the Court's mandate pending a petition for certiorari is warranted where "the [certiorari] petition would present a substantial question and . . . there is good cause for a stay." FED. R. APP. P. 41(d)(1). Both elements are met here, where Alpine will seek the Supreme Court's guidance on two substantial and important questions: (1) whether the Supreme Court's *Axon* language—that "being subjected to an illegitimate proceeding, led by an illegitimate decisionmaker" is a "here-and-now injury" that "is impossible to remedy once the proceeding is over"—*Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023)—applies in the context of injunctive relief and (2) whether FINRA, given the breadth of its power as a private enforcer of federal law, is subject to the Constitution's structural protections.

A stay of the mandate will preserve the status quo while Alpine awaits the Supreme Court's review. Absent a stay, Alpine will suffer the injury that Alpine argues *Axon* recognized as immediate and irreparable. While reasonable minds have differed on the meaning of *Axon*, a stay of the mandate would permit the Supreme Court the opportunity to weigh in on the nature and import of that injury *before* Alpine suffers it.

\*\*\*

1

This Court agreed with Alpine that the FINRA Expedited Proceeding must be enjoined because FINRA's self-executing power to expel Alpine from the securities industry violates the private non-delegation doctrine. *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1337 (D.C. Cir. 2024). However, the Court rejected Alpine's arguments arising under the Appointments Clause on irreparable injury grounds. Alpine argued that being subject to an illegitimate proceeding by an illegitimate decision maker constitutes "a here-and-now injury" that "is impossible to remedy," and thus establishes irreparable injury. *Axon*, 598 U.S. at 191. The interpretation of that recent Supreme Court precedent is subject to debate, both within this case and beyond, and would impact any case in which a party seeks to enjoin an unconstitutionally structured proceeding. In this case, the Court's reading of *Axon* was dispositive as to the question whether Alpine had established its case for injunctive relief on the Appointments Clause claims.[1]

Alpine intends to seek the Supreme Court's guidance on the important question of which of the dueling interpretations of the Supreme Court's *Axon*

---

[1] The threshold *Axon* question applies with equal force to Alpine's private non-delegation claim as to its other separation-of-powers claims, although the panel found the irreparable injury requirement met as to private non-delegation without relying on *Axon*.

precedent is correct, in addition to the broader separation of powers questions surrounding FINRA's structure.

Here, Alpine seeks a stay of the issuance of this Court's mandate while it petitions the Supreme Court of the United States for review of these important questions, both of which present substantial issues.[2] The threshold question of how the lower courts should interpret and apply the Supreme Court's decision in *Axon* in the context of injunctive relief is a question on which judges on the panel, and in this Circuit more broadly, have disagreed. It is also a question of profound importance and lower courts would benefit greatly from clarity about how to interpret and properly apply the Supreme Court's decision in *Axon*.

The same is true for the question of whether FINRA's structure as a corporate enforcer of the federal securities laws implicates Article II's protections on Executive Branch Appointments and presidential supervision and removal. Or, put differently, whether the Constitution's structural protections apply where a purportedly "private" body exercises federal Executive power.

Indeed, the Supreme Court has *already* expressed its interest in the topic by recently granting certiorari in a case raising a private non-delegation question. *See FCC v. Consumers' Rsch.*, No. 24-354 (cert. granted Nov. 22, 2024). There, the

---

[2] Alpine has conferred with FINRA and the United States, both of whom intend to oppose a stay of the mandate.

Court will consider whether the FCC violated the non-delegation doctrine by relying on financial projections from a private company appointed as a fund administrator.

And the Supreme Court also has before it several pending requests for review over related questions in the context of the Horseracing Integrity and Safety Authority (HISA). *See* Cert. Pet., *Horseracing Integrity & Safety Auth., Inc. v. Nat'l Horsemen's Benevolent & Protective Ass'n*, No. 24-433 (U.S. Oct. 15, 2024); Cert. Pet., *FTC v. Nat'l Horsemen's Benevolent & Protective Ass'n*, No. 24-429 (U.S. Oct. 16, 2024); Cert. Pet., *Walmsley v. FTC*, No. 24-420 (U.S. Oct. 10, 2024); Cert. Pet., *Oklahoma v. United States*, No. 23-402 (U.S. Oct. 13, 2024). The Circuits are split on HISA's constitutionality, *see* Resp. to Pet. for Reh'g at 1, *Oklahoma*, No. 23-402 (U.S. Nov. 6, 2024) ("There is now a square conflict among the Courts Of Appeals." (capitalization omitted)), and the Solicitor General of the United States has urged the Supreme Court to grant review, *see* Cert. Pet., *FTC v. Nat'l Horsemen's Benevolent & Protective Ass'n*, No. 24-429 (U.S. Oct. 16, 2024). It is highly plausible—indeed, even likely—that the Supreme Court will want to consider Alpine's petition among these related petitions, or at least refrain from disposing of all the petitions until the central question presented is resolved.

In sum, the questions surrounding the constitutionality of enforcement of the federal laws by a purportedly private body are plainly substantial, and it is

reasonably likely that the Supreme Court will take up one of the pending cases to provide guidance.

Further, good cause exists for a stay of this Court's mandate. Absent a stay, Alpine will face imminent constitutional harm in the form of ongoing disciplinary proceedings, which FINRA has already indicated it will resume immediately.[3] This is the rare case in which there is no doubt whatsoever that Alpine will suffer this irreparable harm—if Alpine is right that *Axon* says that an unconstitutional proceeding is a here-and-now injury that can give rise to a finding of irreparable harm, that injury will lie as soon as FINRA resumes the Expedited Proceeding and its in-house hearing officer renders his decision, regardless of any later decision made by the SEC. On the other hand, a stay of the mandate would preserve the status quo, ensuring that Alpine does not face constitutional injury while it awaits the Supreme Court's review.

In sum, the Court's mandate should be stayed pending the disposition of Alpine's petition for certiorari.

## BACKGROUND

The Financial Industry Regulatory Authority ("FINRA") is a nominally private corporation that acts as a government enforcement agency. Based on its

---

[3] Indeed, FINRA even sought initially to resume its Expedited Proceeding after this Court's decision yet *before* this Court had issued its mandate, despite the still-operative injunction pending appeal enjoining FINRA from doing so.

unusual status as the purportedly "private" enforcer of the federal securities laws, FINRA has insisted that it can exercise enforcement power derived from the government, mandated by the government, and with immunity reserved for the government, all free from the constitutional obligations applicable to government actors. Alpine, which was subject to an ongoing expedited enforcement proceeding ("the Expedited Proceeding"), challenged this structure on constitutional grounds.

Alpine has argued that FINRA, a purportedly "private" body that enforces the federal securities laws against other private parties, violates the Appointments Clause, Article II presidential removal protections, and the private non-delegation doctrine. In so doing, Alpine sought to enjoin an expedited FINRA disciplinary proceeding seeking to expel Alpine from the securities industry. Alpine argued that if FINRA exercises Federal Government power, it must abide by the constitutional limitations on that power.

After the district court denied Alpine injunctive relief,[4] Alpine sought, and was granted by a motions panel of this Court, an injunction pending appeal based on Alpine's challenges to FINRA's structure and exercise of federal government power.

---

[4] In the district court's initial denial via minute order, *see* D.D.C. Minute Order of May 26, 2023, the district court relied on *Springsteen-Abbott v. SEC*, 989 F.3d 4 (D.C. Cir. 2021), reasoning that because "the administrative process before [FINRA] and the [SEC] will not be exhausted until the SEC has had an opportunity to rule on the result of the FINRA proceeding," Alpine's claims could not prevail. D.D.C. Minute Order of May 26, 2023. Alpine filed a motion for reconsideration,

First, Alpine argued that FINRA's structure violated the Appointments Clause and the Article II protections on presidential removal. In *Lucia v. SEC*, the Supreme Court held that SEC ALJs are "Officers of the United States," and thus must be appointed consistent with the Appointments Clause, because they exercise "significant discretion," have "the authority needed to ensure fair and orderly adversarial hearings," and may serve as the "last-word" in an enforcement action. 585 U.S. 237, 247–52 (2018). All of that is also true of FINRA Hearing Officers, who are in all relevant respects indistinguishable from SEC ALJs. Thus, FINRA officers must likewise be appointed consistent with the Constitution's Appointments Clause. As to presidential removal, the Supreme Court held in *Free Enterprise Fund v. PCAOB*, that the structure of a private, quasi-governmental board violated the separation of powers because its officers enjoyed two separate levels of protection from presidential removal. 561 U.S. 477, 482 (2010). The board's members could not be removed at will by the principal officer overseeing them, and that principal officer in turn could not be removed at will by the President. Here again, FINRA's

---

Doc. 65 (D.D.C. May 30, 2023), advising that the Supreme Court had recently overruled *Springsteen-Abbott* in *Axon*, where the Court held that a plaintiff asserting constitutional challenges to an agency's structure may seek an injunction of the regulatory proceeding in district court without first exhausting the administrative process. 598 U.S. at 180. The district court ultimately denied Alpine's renewed preliminary injunction motion, reasoning that Alpine *had* demonstrated irreparable harm but was not likely to succeed on the merits. App.400, 414. Alpine appealed.

7

structure is identical in this dispositive respect, and is unconstitutional under a straightforward application of *Free Enterprise Fund*.

Second, Alpine argued that FINRA's self-executing power to expel private parties from the securities industry violated the private non-delegation doctrine. As to irreparable harm, Alpine argued that it faced two independent forms of irreparable harm. First, FINRA's threat of expelling Alpine from the securities industry constitutes the "corporate death penalty." Second, and relevant here, Alpine argued that it would face the very procedural injury that the Supreme Court in *Axon* recognized as irreparable injury. Justice Kagan, writing for the Court in *Axon*, stated that being subject to an illegitimate proceeding by an illegitimate decision maker constitutes "a here-and-now injury" because "[a] proceeding that has already happened cannot be undone." 598 U.S. at 191. Importantly, this injury would lie even if the SEC chose to provide Alpine subsequent relief from an initial FINRA decision.

The motions panel agreed with Alpine and granted an injunction pending appeal. *See* App.417–18 (Alpine "has satisfied the stringent requirements for an injunction pending appeal."). The FINRA hearing was suspended the same day. In a concurring opinion, Judge Walker concluded that the irreparable harm box was "easily checked." App.420 (Walker, J., concurring). He explained that the Supreme Court has held that "the resolution of claims by an unconstitutionally structured

adjudicator is a 'here-and-now injury' that cannot later be remedied." App.420 (Walker, J., concurring) (quoting *Axon Enterprise*, 598 U.S. at 191). After the motions panel issued its order, FINRA took the extraordinary step of moving for en banc reconsideration of the motion panel's order, which the Court denied.[5]

At the panel stage of Alpine's appeal, after briefing, oral argument, and a round of supplemental briefing, the panel also agreed with Alpine and, ruling on private non-delegation grounds, directed that an injunction of the Expedited Proceeding be entered "enjoining FINRA from giving effect to any expulsion order issued against Alpine until either the SEC reviews the order on the merits or the time for Alpine to seek SEC review lapses." *Alpine*, 121 F.4th at 1337. As to Alpine's claims arising out of the Appointments Clause, the Court held that Alpine failed to establish irreparable harm, finding that Alpine "overreads *Axon*." *Id.* at 1335.[6] In particular,

---

[5] Indeed, even FINRA has acknowledged the legal and practical significance of the issues in this case. *See* FINRA Pet. for Reh'g, Doc. 2010871 (Aug. 3, 2023) (arguing that Alpine's "nondelegation argument[] would upend the centuries-old self-regulatory framework"); *id.* at 5 ("Alpine fares no better in its effort to minimize the significance of the . . . departure from precedent and the dangers it poses to dozens of self-regulatory bodies and millions of market participants"); *id.* at 6 ("Nor can the implications of this case be confined to 'FINRA's unique status.'"); *id.* ("[T]he Injunction Order has far-reaching real-world implications.").

[6] The majority opinion for the panel also relied on Circuit decisions for the proposition that a separation of powers injury does not establish irreparable harm. *See Alpine*, 121 F.4th at 1333–35. But as Judge Walker's opinion explains at some length, those decisions predate *Axon* and are either non-binding or involve inapposite topics. *See id.* at 1349–52 (Walker, J., concurring in the judgment in part and

the Court focused on two distinctions between *Axon* and this case. First, *Axon* involved a "statutory jurisdictional question" and "did not speak to what constitutes irreparable harm for purposes of the extraordinary remedy of a preliminary injunction." *Alpine*, 121 F.4th at 1335–36. Second, "[n]othing in *Axon* addressed an asserted injury from a member of a private organization having to go through a hearing process before such an entity." *Id.* at 1336. Judge Walker, concurring in the judgment in part and dissenting in part, adopted a different reading of *Axon*. *Id.* at 1348–49. As to the factual differences between this case and *Axon*, he reasoned: "To be sure, *Axon* was answering a question about whether a district court had jurisdiction, not whether a court should grant a preliminary injunction. But I struggle to see how an injury that is completely 'impossible to remedy' (the standard there) meaningfully differs from an injury that is 'beyond remediation' (the standard here)." *Id.* at 1348 (Walker, J., concurring in the judgment in part and dissenting in part) (citations omitted).

Neither party moved for rehearing of the panel's decision.

## ARGUMENT

Alpine respectfully moves this Court to stay its mandate pending the filing and disposition of a petition for a writ of certiorari. A stay of the Court's mandate

---

dissenting in part). Nor could Alpine have forfeited any argument that those pre-*Axon* decisions take precedence over *Axon* where FINRA did not invoke those decisions and thus would have forfeited any forfeiture. *See id.*

pending a petition for certiorari is warranted where "the [certiorari] petition would present a substantial question and . . . there is good cause for a stay." FED. R. APP. P. 41(d)(1). Both elements are satisfied here.

### I.    Alpine's Petition for Certiorari Will Raise Substantial Questions of Law.

Alpine's petition for certiorari will raise substantial questions of law concerning the interpretation of Supreme Court precedent on which jurists have disagreed, and which carry implications for both the Constitution's structural protections in the context of private enforcement of the federal laws and the standard for establishing injunctive relief in a wide array of constitutional challenges.

The threshold question on the irreparable injury standard is: does the Supreme Court's holding in *Axon*—that being subject to an illegitimate proceeding by an illegitimate decision maker constitutes "a here-and-now injury," because "a proceeding that has already happened cannot be undone" 598 U.S. at 191—apply when a party subject to an illegitimate proceeding seeks to establish irreparable injury for the purpose of securing injunctive relief? Or, alternatively, is *Axon* cabined to its precise facts?

The dueling perspectives in this case demonstrate the substance of this important question. In this case, the district court below, the opinion concurring in the motions panel order of this Court, and the separate writing on the panel of the Court's decision in this case read *Axon* to apply in the context of establishing

11

irreparable injury for injunctive relief. *See* App.414 ("Consequently, under the Supreme Court's explicit language, the nature of the constitutional claims asserted here, no matter their unlikelihood of success, suffice to show irreparable harm to Alpine"); App. 417–18 (order granting injunction pending appeal in full); App.420 (Walker, J., concurring) (quoting *Axon* for the proposition that "the resolution of claims by an unconstitutionally structured adjudicator is a 'here-and-now injury' that cannot later be remedied"); *Alpine*, 121 F.4th at 1348 (Walker, J., concurring in the judgment in part and dissenting in part) ("The Supreme Court's recent decision in *Axon Enterprise, Inc. v. FTC* tells us that Alpine faces certain and imminent harm that cannot later be fixed.").

In a case *predating Axon*, then-Judge Kavanaugh reached the same result to which the broader reading of *Axon*'s language leads— that being subjected to actions of an "unconstitutionally structured agency" constitutes irreparable injury. *See John Doe Co. v. CFPB*, 849 F.3d 1129, 1136 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) ("Irreparable harm occurs almost by definition when a person or entity demonstrates a likelihood that it is being regulated on an ongoing basis by an unconstitutionally structured agency that has issued binding rules governing the plaintiff's conduct and that has authority to bring enforcement actions against the plaintiff."); *id.* (collecting cases); *Alpine*, 121 F.4th at 1350 (Walker, J., concurring in the judgment in part and dissenting in part) (acknowledging then-Judge Kavanaugh's dissent).

12

As discussed above, the panel majority adopted a different reading of *Axon*, concluding that the "here-and-now injury" language was largely inapposite in this case because *Axon* arose in a distinguishable context. *Alpine*, 121 F.4th at 1335–36. Whoever has the better reading of *Axon*, this interpretive question is cert-worthy. The meaning of a recent Supreme Court precedent—which will impact the preliminary injunction analysis for every structural challenge seeking to enjoin some kind of proceeding, and on which jurists have disagreed—presents a substantial question of law.[7]

Further, the second question presented—the merits of Alpine's Article II claims—provides an additional substantial legal question. The question is whether a purportedly "private" body who exercises federal Executive power through the enforcement of federal law, including the core Executive function of exercising prosecutorial discretion, is subject to Article II's constitutional protections and constraints. Namely, do the Appointments Clause and the guarantees of presidential supervision and removal apply when the enforcer is not formally a part of the Federal Government yet in practice exercises Federal Government power?

---

[7] Nor would after-the-fact SEC review, especially in light of its deference to the illegitimate proceeding and illegitimate decisionmaker, remedy Alpine's *Axon* here-and-now injury.

## II.    Good Cause Exists for a Stay.

This substantial legal question about the meaning of *Axon* also demonstrates why good cause exists for a stay. If this interpretation of *Axon* and separation of powers injuries more broadly has purchase—that is, if *Axon* is not limited to its facts but instead applies just as well in the context of injunctive relief—then good cause strongly counsels toward a stay of this Court's mandate.

Otherwise, Alpine and other similarly situated parties will be unable to ever seek meaningful relief of the threshold question about the impact of such an injury on the irreparable injury analysis. *See, e.g.*, *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023) ("Any harms Loma Linda Health might have endured from the hearing process are over and done with. No injunctive relief could redress them."); *see also Tennessee v. Dep't of Educ.*, 104 F.4th 577, 606 (6th Cir. 2024) ("[T]he upshot of winning this claim is that the States shouldn't be subjected to administrative investigations or proceedings at all. A later court-of-appeals decision could not fully remedy that harm.").

Instead, Alpine will be subject to an illegitimate decision-making process by an illegitimate decision-maker *before* the Supreme Court can even decide whether to weigh in on the interpretive question of the impact of that injury on prospective relief. Alpine will face the very constitutional harm it seeks to avoid, and which *Axon*

14

itself described as irreparable and irreversible in *at least* one other context, if not in all contexts. This would be all the more problematic given that it is at least highly plausible—in light of the acknowledged Circuit split, the agreement of the parties that certiorari should be granted, and the urging of the Solicitor General that the Court should grant review—that the Supreme Court will grant one of the HISA petitions for certiorari and provide guidance about the constitutional implications of the private enforcement of the federal laws.

This Court should stay its mandate pending the Supreme Court's disposition of Alpine's request for clarification on a recent Supreme Court precedent and the follow-on merits issues.

## CONCLUSION

This Court should grant the motion to stay issuance of the mandate.

Date: January 13, 2025                    Respectfully submitted,

Kenneth G. Turkel                         */s/David H. Thompson*
David A. Hayes                            David H. Thompson
TURKEL CUVA BARRIOS, P.A.                 Brian W. Barnes
100 North Tampa Street                    Athanasia O. Livas
Suite 1900                                Cooper & Kirk, PLLC
Tampa, FL 33602                           1523 New Hampshire Ave, N.W.
Phone: (813) 834-9191                     Washington, D.C. 20036
kturkel@tcb-law.com                       Phone: (202) 220-9649
dhayes@tcb-law.com                        dthompson@cooperkirk.com

                                          Maranda E. Fritz
                                          MARANDA E. FRITZ PC
                                          521 Fifth Avenue 17th Floor
                                          New York, New York 10175
                                          Phone: (646) 584-8231
                                          maranda@fritzpc.com

*Counsel for Plaintiff-Appellant Alpine Securities Corporation*

16

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2) because the motion contains 3,492 words. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Date: January 13, 2025                    */s/David H. Thompson*
                                          David H. Thompson

                                          *Counsel for Plaintiff-Appellant*
                                          *Alpine Securities Corporation*

17

## CERTIFICATE OF SERVICE

I certify that on January 13, 2025, I filed the foregoing document via the appellate CM/ECF system of the United States Court of Appeals for the District of Columbia Circuit. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: January 13, 2025                              */s/David H. Thompson*
                                                    David H. Thompson

                                                    *Counsel for Plaintiff-Appellant*
                                                    *Alpine Securities Corporation*

18