**ORAL ARGUMENT HEARD FEBRUARY 8, 2024**
**No. 23-5129**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALPINE SECURITIES CORPORATION,

*Plaintiff-Appellant*,

*v.*

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

*Defendant-Appellee*,

UNITED STATES OF AMERICA,

*Intervenor for Defendant-Appellee.*

On Appeal From The United States District Court For The District Of Columbia
Case No. 1:23-cv-01506-BAH, District Judge Beryl A. Howell

**OPPOSITION OF DEFENDANT-APPELLEE**
**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**
**TO MOTION TO STAY ISSUANCE OF THE MANDATE**

Amir C. Tayrani
Alex Gesch
Max E. Schulman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 887-3692
ATayrani@gibsondunn.com

*Attorneys for Defendant-Appellee*
*Financial Industry Regulatory*
*Authority, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................1

BACKGROUND ..................................................................................3

LEGAL STANDARD ...........................................................................7

ARGUMENT ......................................................................................8

    I.     ALPINE HAS NOT IDENTIFIED A SUBSTANTIAL QUESTION
          WARRANTING SUPREME COURT REVIEW ................................8

          A.    The Supreme Court Is Not Likely To Grant Certiorari
               And Reverse On The Irreparable-Injury Standard.....................8

          B.    The Supreme Court Is Not Likely To Grant Certiorari
               And Reverse On The Merits Of Alpine's Article II
               Claims ...........................................................................11

    II.    ALPINE FAILS TO SHOW GOOD CAUSE FOR A STAY ............................13

CONCLUSION ..................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alpine Sec. Corp. v. FINRA*,
121 F.4th 1314 (D.C. Cir. 2024)...................... 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 14, 15

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023)....................................................................................2, 6, 15

*Baker v. City of McKinney*,
2024 WL 4874818 (U.S. Nov. 25, 2024) ...........................................................8

*Barefoot v. Estelle*,
463 U.S. 880 (1983)............................................................................................7

*Calvert v. Texas*,
141 S. Ct. 1605 (2021) ......................................................................................10

*Cutter v. Wilkinson*,
544 U.S. 709 (2005)..........................................................................................12

*John Doe v. CFPB*,
849 F.3d 1129 (D.C. Cir. 2017).......................................................................10

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
2003 WL 22319584 (D.C. Cir. Sept. 30, 2003).................................................13

*Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995)..........................................................................................12

*Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*,
2023 WL 7294839 (D.C. Cir. May 25, 2023) ...................................................15

*Lucia v. SEC*,
585 U.S. 237 (2018)..........................................................................................12

*McCray v. New York*,
461 U.S. 961 (1983)..........................................................................................10

*Nara v. Frank*,
    494 F.3d 1132 (3d Cir. 2007) ....................................................................7, 16

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
    107 F.4th 415 (5th Cir. 2024) ...................................................................12, 13

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015)...........................................................................................11

*Oklahoma v. United States*,
    62 F.4th 221 (6th Cir. 2023) ............................................................................13

*Saad v. SEC*,
    873 F.3d 297 (D.C. Cir. 2017) ...........................................................................3

*Tennessee v. Dep't of Educ.*,
    104 F.4th 577 (6th Cir. 2024) .....................................................................15, 16

*United States v. Microsoft Corp.*,
    2001 WL 931170 (D.C. Cir. Aug. 17, 2001)............................................2, 7, 14

*United States v. Silver*,
    954 F.3d 455 (2d Cir. 2020) .........................................................................7, 11

*Walmsley v. FTC*,
    117 F.4th 1032 (8th Cir. 2024) ...................................................................12, 13

**Statutes**

15 U.S.C. § 78o-3(b)(6) .........................................................................................16

**Rules**

D.C. Cir. R. 41(a)(2) ................................................................................................7

Fed. R. App. P. 41(d)(1)...........................................................................................7

FINRA Rule 9311(b) ................................................................................................4

S. Ct. R. 10(a)........................................................................................................8, 9

**Other Authorities**

D.C. Cir. Handbook of Practice ...............................................................................9

16AA Wright & Miller, Fed. Prac. & Proc. Juris. § 3987.1 (5th ed.) ......................7

# INTRODUCTION

Alpine Securities Corporation ("Alpine") has not begun to justify staying the issuance of this Court's mandate.  Alpine sought injunctive relief from this Court to prevent its possible expulsion from membership in the Financial Industry Regulatory Authority, Inc. ("FINRA") before the opportunity for SEC review of a FINRA expulsion order.  That potential "harm is no longer pressing," as this Court ruled that Alpine is entitled to a "limited preliminary injunction" preventing FINRA from giving effect to any expulsion order until the SEC has had an opportunity for review (or the time for seeking review has expired), but otherwise found that Alpine has not shown any irreparable harm if the FINRA disciplinary proceeding continues.  *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1319, 1332 (D.C. Cir. 2024).

Even though it no longer faces the risk of expulsion from FINRA before SEC review, Alpine nevertheless seeks to stay issuance of the mandate—and to bar FINRA from resuming the disciplinary proceeding against it—pending the disposition of its forthcoming petition for a writ of certiorari.  But Alpine utterly fails to satisfy the requirements to stay the mandate:  It does not show that its forthcoming petition will present any substantial question for Supreme Court review or that there is good cause warranting a stay of the mandate.

To begin with, Alpine does not argue—let alone show—that there is a reasonable probability that certiorari will be granted or that the Supreme Court will

reverse on either of its two proposed questions: (1) whether being required to participate in an allegedly unconstitutional proceeding necessarily qualifies as irreparable harm for purposes of preliminary-injunctive relief, and (2) whether FINRA's structure violates Article II of the Constitution. As to the applicability of the "'here-and-now-injury'" language of *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023), to preliminary-injunctive relief, Alpine points only to separate statements by two judges of this Court—one of which Alpine failed to cite in its merits briefing and thus "forfeited" as a basis for relief, *Alpine*, 121 F.4th at 1334— rather than to a circuit split warranting Supreme Court review. Likewise, Alpine identifies no basis to conclude that the Supreme Court would likely grant review and reverse on its Article II claims. Nor could it. This Court did not even *reach* the merits of Alpine's appointment and removal claims, and the only two courts of appeals that have considered Alpine's argument that those structural constitutional requirements apply to private parties such as FINRA have *rejected* it. Similarly, to the extent Alpine intends to raise a private nondelegation claim in the Supreme Court, no court has held that FINRA's disciplinary proceedings violate the private nondelegation doctrine where, as here, there is an opportunity for SEC review before any expulsion takes effect.

Alpine has also failed to demonstrate any good cause for a stay, which provides an independent basis to deny the motion. *See United States v. Microsoft*

*Corp.*, 2001 WL 931170, at *1 (D.C. Cir. Aug. 17, 2001) (en banc). This Court need go no further than to apply its holding that there will be no irreparable harm to Alpine if FINRA's disciplinary proceeding resumes, as Alpine is no longer at risk of immediate expulsion before the opportunity for SEC review and at most faces ordinary litigation burdens that do not amount to irreparable harm under binding Circuit precedent. *Alpine*, 121 F.4th at 1333-34. Alpine provides no reason for this Court to reverse course on its holding that these run-of-the-mill litigation burdens do not constitute irreparable harm.

Because there is no reasonable prospect that the Supreme Court will review and reverse this Court's "narrow and limited" preliminary-injunction ruling, *Alpine*, 121 F.4th at 1330—and because Alpine will not suffer irreparable harm while its petition for certiorari is pending—this Court should deny Alpine's motion and allow FINRA to resume its long-delayed disciplinary proceeding against Alpine.

## BACKGROUND

**1.** Alpine is a broker-dealer member of FINRA, a private, not-for-profit Delaware corporation that supervises its members' compliance with the securities laws. *Alpine*, 121 F.4th at 1318; *see also Saad v. SEC*, 873 F.3d 297, 299 (D.C. Cir. 2017) ("FINRA is a private self-regulatory organization"). Alpine has been disciplined multiple times by FINRA and the SEC. In 2022, a FINRA hearing panel found that Alpine had engaged in "'intentional and egregious'" misconduct—

3

including stealing and misusing customer funds and charging unreasonable fees—and ordered Alpine to cease and desist from that conduct. *Alpine*, 121 F.4th at 1322-23. In addition, based on the pervasive nature of the misconduct and the high likelihood of future violations, the panel decided to expel Alpine from FINRA. *Id.*

Although the hearing panel's expulsion order was stayed under FINRA's rules pending Alpine's administrative appeal, the cease-and-desist order remained in force and binding on Alpine. *See* FINRA Rule 9311(b). After additional customer complaints prompted a months-long FINRA investigation, FINRA's Department of Enforcement uncovered evidence that Alpine had violated the cease-and-desist order more than 35,000 times (and was continuing to do so on a daily basis) by charging customers millions of dollars in unreasonable, unfair, and unlawful fees. *See Alpine*, 121 F.4th at 1323. Thus, in April 2023, the Department of Enforcement initiated an expedited proceeding to expel Alpine from FINRA, halt Alpine's ongoing misconduct, and obtain restitution for Alpine's customers. *Id.*

**2.** Months earlier, Alpine and an affiliated company had filed this litigation seeking a declaration that "FINRA is presently constituted and operating in a manner that violates the Constitution" and an order enjoining FINRA from "continuing its unlawful and unconstitutional operation." App.85-86, Prayer for Relief. After FINRA commenced the expedited proceeding, Alpine moved for a preliminary injunction to halt it. The district court denied the motion, ruling that Alpine's

4

arguments "fall far short of amounting to likely sustainable constitutional challenges." App.26. Alpine then moved this Court for an injunction pending appeal. Over Judge Garcia's dissent, a divided motions panel granted that injunction without explaining its reasoning. App.417. The Court denied FINRA's petition for rehearing en banc. Order, Doc. 2013570 (Aug. 22, 2023).

This Court ultimately reversed in part the district court's denial of a preliminary injunction. In a "narrow and limited" opinion that was "necessarily preliminary" and based on a "limited record," the Court concluded that Alpine had shown a likelihood of success on its argument that the lack of opportunity for SEC review before expulsion from FINRA membership in an expedited disciplinary proceeding violates the private nondelegation doctrine. *Alpine*, 121 F.4th at 1330. The Court also concluded that Alpine faced irreparable harm to the extent "it faces a grave risk of being forced out of business before full SEC review." *Id.* at 1329. The Court therefore concluded that Alpine was entitled to a "limited preliminary injunction" and directed that the district court enjoin FINRA from "giving effect to any expulsion order" prior to the opportunity for SEC review. *Id.* at 1319, 1337.

The Court otherwise "dissolved" the motions panel's injunction pending appeal because Alpine had not demonstrated that it was entitled to broader injunctive relief. *Alpine*, 121 F.4th at 1337. In particular, the Court held the private nondelegation doctrine likely is not violated when FINRA "enforces its own private

5

rules against a member and seeks remedies against that member that run only to FINRA, and not to the government." *Id.* at 1328 (emphasis omitted). In addition, the Court concluded that Alpine was not entitled to a preliminary injunction on its Appointments Clause claim because it "has not demonstrated that it will suffer irreparable harm from its asserted Appointments Clause violations." *Id.* at 1332.

In so ruling, the Court reasoned that the Supreme Court's holding in *Axon*—that "an alleged Appointments Clause violation is 'a here-and-now injury' that 'is impossible to remedy once the administrative proceeding is over'"—did not support Alpine's claim of irreparable harm from being required to participate in the supposedly unconstitutional FINRA disciplinary proceeding. *Alpine*, 121 F.4th at 1335 (quoting *Axon*, 598 U.S. at 191). As the Court explained, "*Axon* answered a statutory jurisdictional question about whether Congress intended to oust district courts of jurisdiction," it "did not speak to what constitutes irreparable harm for purposes of the extraordinary remedy of a preliminary injunction," and, in any event, "FINRA is not a government agency like those at issue in *Axon*." *Id.* at 1335-36 (alterations omitted). Although Judge Walker, dissenting in relevant part, made several "arguments on Alpine's behalf" on the irreparable-harm issue, the Court held that Alpine "ha[d] forfeited" these arguments by "ignor[ing]" them in its brief. *Id.* at 1334.

## LEGAL STANDARD

A stay of this Court's mandate is an exceptional measure that "is far from a foregone conclusion."  16AA Wright & Miller, Fed. Prac. & Proc. Juris. § 3987.1 (5th ed.).  Alpine, as the movant, "must show" both that (1) its petition for a writ of certiorari "would present a substantial question" and that (2) "there is good cause for a stay."  Fed. R. App. P. 41(d)(1); *accord* D.C. Cir. R. 41(a)(2).

A "substantial question" is one that not only is "likely to lead to Supreme Court review," *Microsoft*, 2001 WL 931170, at *1, but also poses a "significant possibility of reversal," *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983) (internal quotation marks omitted).  In other words, a movant must show that there is (1) "a 'reasonable probability' that four justices will vote to grant certiorari" and (2) "a 'fair prospect' that five justices will vote to reverse the Panel's judgment."  *United States v. Silver*, 954 F.3d 455, 458 (2d Cir. 2020).  And to show "good cause," Alpine must establish both "a likelihood of irreparable injury absent a stay" and that "the interests of the parties and the public favor a stay."  *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007).  If the movant "has failed to demonstrate any substantial harm" will likely occur while its petition is pending, the movant has failed to establish good cause, and this Court "need not decide" whether the petition presents a "'substantial question.'"  *Microsoft*, 2001 WL 931170, at *1.

7

## ARGUMENT

I.    **ALPINE HAS NOT IDENTIFIED A SUBSTANTIAL QUESTION WARRANTING SUPREME COURT REVIEW.**

### A.    The Supreme Court Is Not Likely To Grant Certiorari And Reverse On The Irreparable-Injury Standard.

Alpine's "threshold question on the irreparable injury standard" is not "cert-worthy" because the Court's "narrow," "limited," and "preliminary" decision does not even arguably implicate a circuit split.  *Contra* Mot. 11, 13; *see also Alpine*, 121 F.4th at 1330.

The Supreme Court will grant certiorari "only for compelling reasons," such as when "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter."  S. Ct. R. 10(a).  Of course, even a circuit split is often insufficient reason to grant certiorari, especially where only a handful of circuits have weighed in on a question that arose recently.  *See*, *e.g.*, *Baker v. City of McKinney*, 2024 WL 4874818, at *2 (U.S. Nov. 25, 2024) (statement of Sotomayor, J., joined by Gorsuch, J., respecting the denial of certiorari) (voting against certiorari to allow "further percolation in the lower courts prior to this Court's intervention" on a split between "[o]nly a few Courts of Appeals").

Alpine does not identify *any* circuit-court decision with which this Court's irreparable-harm holding conflicts.  Indeed, Alpine does not point to a single

decision in which another circuit has even *addressed* whether *Axon*'s "here-and-now-injury" language is relevant to the preliminary-injunction analysis.

Instead, Alpine points to Judge Walker's concurrence in the motions panel's injunction order, his partial dissent from the Court's opinion on the merits, a pre-*Axon* dissent from then-Judge Kavanaugh, and a statement by the district judge below.  Mot. 11-12; *see also Alpine*, 121 F.4th at 1349 (Walker, J., concurring in the judgment in part and dissenting in part) (similarly discussing "our circuit's cases," not any other's).  But a circuit judge's opinion speaking only for himself in concurrence or dissent—like the opinion of a lone district judge—is not a "decision" of "a United States court of appeals" that could give rise to a circuit split worthy of Supreme Court review.  S. Ct. R. 10(a).  At most, disagreement among the judges of this Court could present grounds to seek rehearing en banc, *see* D.C. Cir. Handbook of Practice 43, which Alpine has elected not to seek.  In fact, Alpine affirmatively opposed FINRA's request for en banc review at the motions-panel stage, arguing that this case did not warrant that "extraordinary step" because it merely involved "a single enforcement proceeding against a single company," without "broader" implications, Opp. 6-8, Doc. 2010366 (July 31, 2023)—arguments that are incompatible with the notion that this case supposedly implicates the type of "important matter" that warrants Supreme Court review, S. Ct. R. 10(a).

In any event, even Alpine's intra-circuit disagreement is overstated. Then-Judge Kavanaugh's dissent in *John Doe v. CFPB*, 849 F.3d 1129 (D.C. Cir. 2017), is of questionable relevance to the "interpretation of *Axon*" because it "*predat*[*ed*]" that decision by six years, Mot. 12, 14. Moreover, as Judge Walker emphasized, the opinion is a mere separate writing to an "unpublished order" by an "emergency panel." *Alpine*, 121 F.4th at 1350.

Alpine also gets things backward by suggesting that *Axon*'s "recen[cy]" supports certiorari. *Contra* Mot. 11, 13, 15. The fact that *Axon* is a recent decision that has not yet been thoroughly considered by the courts of appeals is another reason that this issue "would benefit from further percolation in the lower courts prior to th[e Supreme] Court granting review." *Calvert v. Texas*, 141 S. Ct. 1605, 1606 (2021) (statement of Sotomayor, J., respecting the denial of certiorari); *see also*, *e.g.*, *McCray v. New York*, 461 U.S. 961, 962 (1983) (opinion of Stevens, J., joined by Blackmun and Powell, JJ., respecting the denial of certiorari) (where "[t]here is presently no conflict of decision within the federal system," "further consideration of the substantive and procedural ramifications of the problem by other courts will enable us to deal with the issue more wisely at a later date"). Further development by other courts is assured if, as Alpine argues, the *Axon* issue "will impact the preliminary injunction analysis for every structural challenge seeking to enjoin some kind of proceeding." Mot. 13.

Finally, this case is a particularly poor vehicle for the Supreme Court to consider the irreparable-injury standard because Alpine "has forfeited" the irreparable-injury arguments that Judge Walker made on its behalf, including the argument that then-Judge Kavanaugh's dissent in *Doe* articulates the correct standard for assessing irreparable harm in constitutional cases. *Alpine*, 121 F.4th at 1334. Alpine's merits briefing made "no argument at all that [this Court's pre-*Axon*] precedent has been effectively overruled or that there is any other basis on which this panel could depart from it"; "[i]n fact, Alpine ignore[d] all three of" this Court's controlling cases, including *Doe*. *Id.* Absent unusual circumstances—none of which is present here—the Supreme Court will not entertain arguments not made below. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 38 (2015).

### B. The Supreme Court Is Not Likely To Grant Certiorari And Reverse On The Merits Of Alpine's Article II Claims.

The Supreme Court is also unlikely to grant review and reverse on the "merits of Alpine's Article II claims." Mot. 13. Alpine does not even attempt to demonstrate that there is a "reasonable probability" that certiorari will be granted on this issue or "a 'fair prospect' that five justices will vote to reverse the Panel's judgment." *Silver*, 954 F.3d at 458. Nor could it.

As an initial matter, this Court did not reach the merits of Alpine's appointment and removal claims, *Alpine*, 121 F.4th at 1337, making this case an exceedingly poor vehicle for the Supreme Court to address those questions. *See*

*Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) ("we are a court of review, not first view").

Moreover, there is not even an arguable circuit split on the applicability of Article II's appointment and removal requirements to a private entity, like FINRA. Alpine points to cases addressing the constitutionality of the Horseracing Integrity and Safety Authority ("HISA"), Mot. 4, but both the Fifth and Eighth Circuits there *rejected* Alpine's position that the Constitution's appointment and removal requirements can apply to private parties.

In *National Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415 (5th Cir. 2024), the Fifth Circuit, applying *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), rejected an Appointments Clause challenge to HISA, a private self-regulatory organization "modeled on . . . FINRA," because the plaintiff did not clear "*Lebron*['s] . . . insuperable hurdle" to demonstrate that "a private entity qualifies as part of the government for constitutional purposes." 107 F.4th at 434, 437-39. The Eighth Circuit rejected an Appointments Clause challenge to HISA on the same grounds in *Walmsley v. FTC*, 117 F.4th 1032 (8th Cir. 2024), agreeing "with the Fifth Circuit that the Act does not conflict with the Appointments Clause" because "[t]he *Lebron* standard is not satisfied." *Id.* at 1041. And both courts expressly rejected the challengers' arguments, also advanced by Alpine here, that *Lucia v. SEC*, 585 U.S. 237 (2018), should be extended to private entities that

12

are not part of the government under *Lebron*. *See Black*, 107 F.4th at 439; *Walmsley*, 117 F.4th at 1041.

Accordingly, there is no plausible reason—let alone a reasonable probability—that the Supreme Court would grant certiorari on Alpine's appointment and removal claims, where this Court did not reach the merits and both courts of appeals that have addressed the issue have rejected Alpine's position.[*]

## II.    ALPINE FAILS TO SHOW GOOD CAUSE FOR A STAY.

In addition, Alpine fails to show "good cause" for its requested stay because it "faces no possibility of irreparable harm" should the mandate issue and FINRA's expedited proceeding move forward. *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 2003 WL 22319584, at *1 (D.C. Cir. Sept. 30, 2003) (unpublished)

---

[*] It is unclear from Alpine's motion whether it also intends to seek Supreme Court review of this Court's ruling that permitting FINRA to move forward with its disciplinary proceeding likely does not violate the private nondelegation doctrine now that FINRA has been enjoined from immediately expelling Alpine prior to the opportunity for SEC review. Alpine makes no effort to demonstrate that this issue presents a substantial question warranting certiorari, but, regardless, it does not. No court has held that FINRA's disciplinary proceedings violate the private nondelegation doctrine where there is an opportunity for SEC review before any expulsion takes effect, and the court that identified a private nondelegation problem with HISA's enforcement actions went out of its way to distinguish FINRA. *See Black*, 107 F.4th at 434 (distinguishing the SEC-FINRA relationship); *see also Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023) ("In case after case, courts have upheld th[e] [SEC-FINRA] arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement makes the [self-regulatory organizations] permissible aides and advisors.").

(Edwards, J., joined by Tatel, J., concurring in the denial of a stay).  This failure is a sufficient reason, standing alone, to deny the motion.

This Court has already held that Alpine will not suffer irreparable harm from the FINRA disciplinary proceeding now that FINRA is enjoined from expelling Alpine before the SEC can review FINRA's decision.  *Alpine*, 121 F.4th at 1332-33, 1336.  As this Court explained, "being investigated by, or participating in a proceeding before, an unconstitutionally appointed officer is not, without more, an injury that necessitates preliminary injunctive relief."  *Id.* at 1334.  Because Alpine has not shown that "substantial harm" would occur "during the limited pendency of [any] certiorari petition," *Microsoft*, 2001 WL 931170, at *1, it is not entitled to a stay.

Alpine nevertheless argues that it "will face imminent constitutional harm in the form of ongoing disciplinary proceedings," Mot. 5, "[*i*]f [its] interpretation of *Axon* and separation of powers injuries more broadly has purchase" and *if* FINRA disciplinary proceedings are actually unconstitutional, *id.* at 14 (emphasis added).  But those are two big "ifs."   In fact, this Court's decision forecloses both contingencies—it holds that alleged constitutional injury is *not* "irreparable harm to Alpine that necessitates the exceptional remedy of a preliminary injunction against the proceeding itself" and identifies no likely constitutional deficiency with FINRA's disciplinary proceeding other than the now-enjoined possibility of an

14

immediate expulsion before an opportunity for SEC review. *Alpine*, 121 F.4th at 1337. In contending that "Alpine *will* be subject to an illegitimate decision-making process by an illegitimate decision-maker" if the FINRA hearing resumes, Mot. 14 (emphasis added), Alpine is putting the remedial cart before the constitutional-violation horse.

The cases that Alpine cites do not establish "good cause" for a stay. In *Loma Linda-Inland Consortium for Healthcare Education v. NLRB*, 2023 WL 7294839 (D.C. Cir. May 25, 2023), the Court *denied* an injunction pending appeal, rejecting the movant's reliance on *Axon* because it was raising an as-applied challenge to a specific exercise of jurisdiction, as opposed to an *Axon*-like challenge to the NLRB's "'structure'" or "'very existence.'" *Id.* at *11 (quoting *Axon*, 598 U.S. at 189). Similarly, here, Alpine's counsel repeatedly emphasized that Alpine's appeal presents an "as-applied" challenge. Tr. of Oral Argument, at 4-5, 18, 39, 41 (Feb. 8, 2024).

*Tennessee v. Department of Education*, 104 F.4th 577 (6th Cir. 2024), is even further afield. The language quoted by Alpine comes from the Sixth Circuit's discussion of whether Title IX allows for pre-enforcement challenges to agency action. *Id.* at 606. That court found that, without pre-enforcement review, meaningful judicial review would not be possible because most Title IX matters are resolved "informally." *Id.* Here, by contrast, Alpine will have the opportunity for

further judicial review after the completion of FINRA's disciplinary proceeding and any appeal to the SEC.  And, in its analysis of irreparable harm, the Sixth Circuit found that the plaintiff States would suffer irreparable harm from unrecoverable compliance costs and the invasion of state sovereignty.  *Id.* at 613.  Alpine claims no comparable harms in its motion.

Finally, Alpine does not argue that "the interests of the parties and the public favor a stay."  *Nara*, 494 F.3d at 1133.  Here, they do not.  Instead, a stay would thwart FINRA's critical enforcement functions and impair its statutory obligation to "protect investors and the public interest."  15 U.S.C. § 78o-3(b)(6).

## CONCLUSION

Alpine's forthcoming petition for certiorari will not present a substantial question, and there is no good cause for a stay.  The Court should therefore deny the motion to stay issuance of the mandate.

Dated:  January 27, 2025

Respectfully submitted,

*/s/ Amir C. Tayrani*
Amir C. Tayrani
Alex Gesch
Max E. Schulman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 887-3692
ATayrani@gibsondunn.com
AGesch@gibsondunn.com
MSchulman@gibsondunn.com

*Attorneys for Defendant-Appellee*
*Financial Industry Regulatory Authority, Inc.*

17

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,740 words; and

2.    This document complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated:  January 27, 2025                    Respectfully submitted,

*/s/ Amir C. Tayrani*
Amir C. Tayrani
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 887-3692
atayrani@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2025, I caused a true and correct copy of this document to be electronically filed through the Court's CM/ECF system, which will send a notice of filing to all registered users.

Dated:  January 27, 2025

Respectfully submitted,

*/s/ Amir C. Tayrani*
Amir C. Tayrani
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 887-3692
atayrani@gibsondunn.com