**[CASE DECIDED NOVEMBER 22, 2024]**

No. 23-5129

=============================================================

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

ALPINE SECURITIES CORPORATION, et al.,

Plaintiffs-Appellants,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, Inc.,

Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**INTERVENOR THE UNITED STATES' OPPOSITION TO
MOTION TO STAY THE MANDATE**

———————————

MICHAEL D. GRANSTON
  *Deputy Assistant Attorney
  General*

MARK B. STERN
GERARD SINZDAK
COURTNEY L. DIXON
CAROLINE TAN
  *Attorneys, Appellate Staff
  Civil Division, Room 7246
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 353-8189*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................... 1

STATEMENT.................................................................................................. 2

ARGUMENT ............................................................................................... 10

CONCLUSION ........................................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                  **Page(s)**

*Alpine v. Financial Indus. Regulatory Auth.*,
  121 F.4th 1314 (D.C. Cir. 2024) ....... 1, 2, 6, 7, 8, 9, 10, 12, 12-13, 14, 15

*Axon Enters. v. Federal Trade Comm'n*,
  598 U.S. 175 (2023) ............................................................... 9, 11

*Bloomberg L.P. v. SEC*,
  45 F.4th 462 (D.C. Cir. 2022) ..................................................... 2

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010) .................................................................. 11

*John Doe Co. v. CFPB*,
  849 F.3d 1129 (D.C. Cir. 2017) ................................................ 13

*Leachco, Inc. v. CPSC*,
  103 F.4th 748 (10th Cir. 2024) ................................................. 13

*National Ass'n of Sec. Dealers, Inc. v. SEC*,
  431 F.3d 803 (D.C. Cir. 2005) ................................................. 3, 4

*National Horsemen's Benevolent & Protective Assoc. v. Black*,
  107 F.4th 415 (5th Cir. 2024) ............................................... 15, 16

*Oklahoma v. United States*,
  62 F.4th 221 (6th Cir. 2023) ...................................................... 3

*Sunshine Anthracite Coal Co. v. Adkins*,
  310 U.S. 381 (1940) .................................................................... 7

*Walmsley v. FTC*,
  117 F.4th 1032 (8th Cir. 2024) ................................................. 15

*YAPP USA Auto. Sys., Inc. v. NLRB,*
  2024 WL 4489598 (6th Cir. Oct. 13, 2024) ........................................... 13

**U.S. Constitution:**

Art. II, § 2 ................................................................................................ 14

**Statutes:**

15 U.S.C. § 78o-3(b)(8) .............................................................................. 3

15 U.S.C. § 78o-3(h)(1) .............................................................................. 3

15 U.S.C. § 78s(b) ...................................................................................... 3

15 U.S.C. § 78s(c) ...................................................................................... 3

15 U.S.C. § 78s(d)(1) .................................................................................. 3

15 U.S.C. § 78s(d)(2) .................................................................................. 4

15 U.S.C. § 78s(e) ...................................................................................... 4

15 U.S.C. § 78y(a)(1) .................................................................................. 4

**Regulation:**

17 C.F.R. § 201.452 .................................................................................... 4

**Rule:**

Fed. R. App. P. 41(d)(1) ............................................................................ 10

## GLOSSARY

| | |
|---|---|
| Alpine | Alpine Securities Association, Inc. |
| JA | Joint Appendix |
| FINRA | Financial Industry Regulatory Authority, Inc. |
| SEC | Securities and Exchange Commission |

## INTRODUCTION AND SUMMARY

This case concerns an expedited disciplinary proceeding brought by the Financial Industry Regulatory Authority (FINRA), a private self-regulatory organization in the securities industry, against one of its members, Alpine Securities Association, Inc. (Alpine), to expel Alpine from FINRA membership. On appeal from the district court's denial of a preliminary injunction, this Court concluded that Alpine had established a likelihood of success on the merits with respect to one aspect of its claims and directed the district court on remand to enter a "limited preliminary injunction" preventing FINRA "from giving effect to any expulsion order issued against Alpine until" the Securities and Exchange Commission (SEC) has an opportunity to review FINRA's action. *See Alpine v. Financial Indus. Regulatory Auth.*, 121 F.4th 1314, 1319, 1330-31 (D.C. Cir. 2024).

Alpine now asks this Court to stay issuance of the mandate pending the disposition of a petition for a writ of certiorari that it intends to file in the Supreme Court. That request should be denied. As an initial matter, in seeking a stay of the mandate, Alpine appears to assume that the emergency injunction pending appeal this Court

entered at an earlier stage of this appeal, which enjoined FINRA's expedited proceeding from going forward at all, remains in effect until this Court's mandate issues. *See* Mot. 5. But in its opinion, this Court directed that the injunction pending appeal was "hereby dissolved" except as consistent with this Court's decision. *See Alpine*, 121 F.4th at 1337. Alpine does not explain how a stay of the mandate would allow it to retain the benefits of the broader injunction pending appeal.

Regardless, Alpine provides no basis for staying the mandate. Alpine cannot demonstrate a reasonable prospect that the Supreme Court will grant certiorari on the two issues that it intends to raise or that, if the Supreme Court did so, it would reverse this Court's decision. Nor do the equities warrant the broader relief that Alpine seeks, particularly when the limited injunction this Court provided ensures that Alpine does not face the primary harm it has asserted in this preliminary posture.

## STATEMENT

**1.** FINRA is a "private association of securities broker-dealers," *Bloomberg L.P. v. SEC*, 45 F.4th 462, 466 (D.C. Cir. 2022), registered with the SEC as a self-regulatory organization. As a registered national

2

securities association and a self-regulatory organization, FINRA "propose[s] rules for the [brokerage] industry" and "initially enforce[s] the rules through internal adjudication," subject to SEC oversight. *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023). The SEC reviews and approves or disapproves FINRA's proposed rules after public notice and comment and may conduct its own rulemaking to "abrogate, add to, and delete from" any FINRA rule as it "deems necessary or appropriate" to further the purposes of the statute. *See* 15 U.S.C. § 78s(b), (c).

As particularly relevant here, in the event that a FINRA member violates applicable rules, FINRA "has the authority to consider disciplinary action in the first instance." *National Ass'n of Sec. Dealers, Inc. v. SEC*, 431 F.3d 803, 805 (D.C. Cir. 2005). FINRA's disciplinary proceedings are governed by the Exchange Act's requirements and a set of internal rules that have been approved by the SEC. *See, e.g.*, 15 U.S.C. § 78o-3(b)(8); *id.* § 78o-3(h)(1).

By statute, FINRA must notify the SEC of "any final disciplinary sanction," 15 U.S.C. § 78s(d)(1), at which point the SEC has "plenary review powers" over FINRA's initial adjudication, *National Ass'n of Sec.*

3

*Dealers, Inc.*, 431 F.3d at 806. The SEC may, on its own motion or on application, review the initial disciplinary determination. 15 U.S.C. § 78s(d)(2). The SEC reviews FINRA's determinations de novo, "mak[ing] an independent determination as to whether the violations found by the association occurred" and changing FINRA's sanctions as appropriate. *National Ass'n of Sec. Dealers, Inc.*, 431 F.3d at 806 (citing 15 U.S.C. § 78s(e)). The SEC "may adduce additional evidence" not presented before FINRA. *Id.* (citing 17 C.F.R. § 201.452). And a person aggrieved by the SEC's adjudication may seek judicial review in the appropriate court of appeals. 15 U.S.C. § 78y(a)(1).

**2. a.** Alpine is a securities broker-dealer and a FINRA member. JA18. In 2022, an internal FINRA disciplinary panel determined that Alpine had engaged in "intentional and egregious" misconduct in violation of FINRA rules. *See* JA240-45. Alpine sought further review within FINRA, which stayed the effect of many of the panel's disciplinary sanctions but did not stay the effect of a cease-and-desist order that was entered to ensure that Alpine did not continue to engage in the same conduct. *See* JA244-48.

While Alpine was pursuing review of the disciplinary panel's determination within FINRA, FINRA determined that Alpine was continuing to engage in the conduct that was the basis for the unstayed cease-and-desist order.  JA251.  FINRA initiated a new, expedited disciplinary process seeking restitution for the ongoing violations and an order expelling Alpine from FINRA membership.  JA265.

**b.**  Alpine thereafter filed this action in federal district court, challenging what Alpine contends is "the unconstitutional operation and structure of FINRA."  *See* JA13.  As relevant here, Alpine presented two "alternative" claims: (1) the Exchange Act violates the private-nondelegation doctrine by assigning FINRA, a private entity, a role under the Exchange Act without making FINRA subordinate to the government; and (2) FINRA's executives and directors must be appointed and removable as if they were part of the government in a manner that complies with the Appointments Clause and Article II.  *See* Opening Br. 38-53.

Alpine sought a preliminary injunction seeking to halt the ongoing expedited proceedings against it.  Dkt. No. 66.  In particular, Alpine emphasized that if FINRA were to issue an expulsion order at the

conclusion of its expedited proceedings, that order would take effect immediately under FINRA's rules and, as a practical matter, would require Alpine to shut down "before the SEC can even review FINRA's actions." *Id.* at 2. The district court denied a preliminary injunction, concluding that Alpine had fallen short of establishing a likelihood of success on any of its claims and that the balance of the equities weighed against the extraordinary relief sought. JA399.

Alpine appealed and sought an injunction pending appeal. A divided motions panel issued a per curiam, unpublished order summarily granting the motion and enjoining FINRA "from continuing the expedited enforcement proceeding against [Alpine] pending further order of the court." JA417.

**3.** A merits panel of this Court reversed the denial of a preliminary injunction in one respect, concluding that Alpine had established a likelihood of success on the merits of its private-nondelegation claim "only to the extent the district court" would have "allowed FINRA to expel Alpine" from its membership "with no opportunity for SEC review." *Alpine*, 121 F.4th at 1319.

The Court recognized that FINRA is a "private" entity and that, under the private-nondelegation doctrine, a private entity may play a role in administering a federal scheme so long as it acts "'as an aid' to an accountable government agency that retains the ultimate authority to 'approve[], disapprove[], or modif[y]' the private entity's actions and decisions." *Alpine*, 121 F.4th at 1321, 1325 (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 388, 399 (1940)). The Court explained that, "[t]ypically, SEC oversight of FINRA disciplinary actions involves the SEC 'conduct[ing] its own review' of any final decision or sanction" and approving, disapproving, or modifying FINRA's decision. *Id.* at 1326. But the Court found that "expulsions imposed through FINRA's expedited proceedings" differ from this typical course because they take effect immediately under FINRA's rules and have the practical effect of requiring a FINRA member to "shut down." *Id.* at 1326, 1331, 1329. The Court reasoned that the "unique" nature of that disciplinary sanction made later plenary review by the SEC "a largely academic exercise." *Id.* at 1326, 1331 & n.3. And although the SEC may grant a stay of FINRA's disciplinary sanction, this Court was not convinced at this preliminary stage that the SEC's

stay authority was sufficient to alleviate the likely private-nondelegation concern the Court had identified. *See id.* at 1326-28.

Addressing the remaining preliminary injunction factors, the Court concluded that "Alpine faces irreparable harm because it faces a grave risk of being forced out of business before full SEC review." *Id.* at 1329-30. And the Court found that the equities weighed in favor of a "narrow" and "limited" injunction to "ensure[] that Alpine's constitutional claims can be fully litigated" without significantly impairing FINRA's operations. *Id.* at 1330.

The Court also addressed Alpine's separate claim that "FINRA's hearing officers are officers of the United States who must be appointed in conformance with the Appointments Clause," concluding that Alpine was not entitled to a preliminary injunction because it "has not demonstrated that it will suffer irreparable harm." *Alpine*, 121 F.4th at 1331-32. Although Alpine asserted that it would be forced to close if it were expelled from FINRA, the panel explained that "[t]hat harm is no longer pressing" given that, under the "limited preliminary injunction" the Court had already ordered with respect to the private-nondelegation claim, Alpine will not be expelled from membership until the SEC has

"the final word." *Id.* at 1332. Alpine also raised an additional

argument that it will experience *per se* irreparable harm if it must

proceed before hearing officers that it alleges are unconstitutionally

appointed. This Court rejected that argument, explaining that it was

foreclosed by Circuit precedent and that the Supreme Court's decision

in *Axon Enterprises v. Federal Trade Commission*, 598 U.S. 175 (2023),

did not overrule that precedent. *See Alpine*, 121 F.4th at 1333-37.

     The Court acknowledged that, in a partial dissenting opinion,

Judge Walker expressed his view that FINRA is likely unconstitutional

because it exercises "significant executive authority that the

Constitution vests in the Executive Branch alone." *Alpine*, 121 F.4th at

1333 (Walker, J., concurring in the judgment in part and dissenting in

part). The Court explained that it was not persuaded by that

argument, however, which "melds the private nondelegation doctrine

with Alpine's Appointments Clause arguments" and is "unsupported by

a single case from the Supreme Court, this court, or any appellate

court." *Id.* at 1329.

## ARGUMENT

Alpine asks this Court to stay its mandate while it files a petition for certiorari in the Supreme Court. This Court should deny that request. As an initial matter, in seeking to stay the mandate, Alpine appears to assume that a stay of the mandate would prolong the injunction pending appeal issued by a motions panel at the outset of this case, which enjoined FINRA from proceeding with its expedited disciplinary action at all. *See* Mot. 5. It is not clear that is the case. That injunction pending appeal was entered "pending further order of the court," JA417, and this Court's opinion ordered that injunction "hereby dissolved" except insofar as it prohibits FINRA from expelling Alpine until the SEC has reviewed the expulsion order, *see Alpine*, 121 F.4th at 1337. Alpine does not explain how a stay of the mandate would restore the motions panel's broader injunction.

Regardless, Alpine provides no basis for a stay of the mandate. To obtain a stay of the mandate pending a petition for a writ of certiorari, a movant "must show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). A movant must establish a reasonable probability that four

10

Justices of the Supreme Court will vote to grant certiorari; a fair prospect that a majority of the Supreme Court will vote to reverse; and a likelihood that irreparable harm will result absent a stay. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). Alpine has not made any of these required showings.

**A.** First, Alpine has not established a reasonable likelihood that the Supreme Court will grant its petition for a writ of certiorari or that if it did so, it would reverse this Court's decision.

Alpine primarily asserts that it intends to seek Supreme Court review of whether *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), establishes that having to proceed before an allegedly unconstitutional decisionmaker, standing by itself, constitutes irreparable harm for purposes of preliminary injunctive relief. *See* Mot. 11. That issue was not the primary focus of the parties' briefing or this Court's decision. *See, e.g.*, Opening Br. 48 (devoting one paragraph to this issue). In seeking preliminary relief, Alpine primarily emphasized that it faced irreparable harm from the threat that FINRA would expel it from its membership at the conclusion of the expedited proceedings, which Alpine asserted would require it to "shut down" "before the SEC" had an

11

opportunity to review FINRA's decision on the merits. *See* Dkt. 66, at 1-3; *see also* Opening Br. 3. At oral argument before this Court, counsel for Alpine specifically stressed that the relief it sought in this preliminary posture is "narrow": "the ability to continue to run its business while it pursues its claims." *See* Oral Argument 0:37-0:51.

This Court agreed with Alpine that it had demonstrated irreparable harm from the threat that FINRA would expel it from its membership and that its business would close as a result, and this Court granted Alpine the narrow relief it had emphasized it was requesting: a preliminary injunction preventing "FINRA during the pendency of this litigation from expelling Alpine" from its membership "until after the SEC has reviewed any expulsion order," should one issue. *See Alpine*, 121 F.4th at 1330, 1337. There is not a reasonable probability that the Supreme Court will grant certiorari in this interlocutory posture to address Alpine's additional theory of irreparable injury where this Court granted Alpine the primary preliminary relief that it sought.

In any event, this Court correctly recognized that Alpine's irreparable-harm argument "overreads" *Axon*. *See Alpine*, 121 F.4th at

12

1335.  As this Court explained, *Axon* "answered a statutory jurisdictional question" and "did not speak to what constitutes irreparable harm for purposes of the extraordinary remedy of a preliminary injunction."  *Id.* at 1335-36.  *Axon* therefore did not disturb past precedents of this Court and other courts holding that having to proceed before an allegedly unconstitutional decision-maker, standing by itself, "is not invariably an irreparable injury."  *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017); *see Alpine*, 121 F.4th at 1335.

Alpine does not identify any conflict amongst the Circuits on this issue.  To the contrary, the Tenth and Sixth Circuits have rejected substantially similar arguments that, under *Axon*, having to proceed before an allegedly unconstitutionally structured proceeding is a *per se* irreparable harm for purposes of injunctive relief.  *See, e.g.*, *Leachco, Inc. v. CPSC*, 103 F.4th 748, 758-59 (10th Cir. 2024) ("*Axon* did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief."); *YAPP USA Auto. Sys., Inc. v. NLRB*, 2024 WL 4489598, *3 (6th Cir. Oct. 13, 2024) (similar).  The plaintiff in *Leachco* petitioned for certiorari and raised a substantially similar

13

question based on *Axon* as Alpine intends to raise here, *see* Pet. for Writ of Certiorari at 15, 25-30, *Leachco, Inc. v. CPSC*, No. 24-145 (U.S. Aug. 9, 2024), and the Supreme Court denied certiorari, *see* 2025 WL 76435 (U.S. Jan. 13, 2025).

Alpine further asserts that it will seek Supreme Court review of whether FINRA's hearing officers must be appointed consistent with the Constitution's requirements for "Officers of the United States." U.S. Const. art. II, § 2; *see* Mot. 13. This Court did not address Alpine's likelihood of success on the merits of that question, however, in light of its conclusion that Alpine had failed to establish irreparable harm for purposes of that claim. *See Alpine*, 121 F.4th at 1337. There is no fair prospect that the Supreme Court will grant review to address that question in the first instance, particularly given the preliminary posture of this case.

Even setting that problem aside, the Supreme Court is unlikely to grant certiorari. FINRA is a private "Delaware nonprofit corporation" that was not created by the federal government and "its personnel are private employees." *See Alpine*, 121 F.4th at 1336. It is the private-nondelegation doctrine, not the Appointments Clause, that governs the

14

role that a private entity can play in helping to administer a federal regulatory scheme. *See National Horsemen's Benevolent & Protective Assoc. v. Black*, 107 F.4th 415, 438-39 (5th Cir. 2024). Alpine's Appointments Clause arguments, like the theory advanced by Judge Walker in his partial dissent, incorrectly "melds the private nondelegation doctrine" with Appointments Clause doctrine and is "unsupported by a single case from the Supreme Court, this court, or any appellate court." *Alpine*, 121 F.4th at 1329; *see also National Horsemen's Benevolent & Protective Assoc.*, 107 F.4th at 438-39.

Alpine's reliance on cases addressing a self-regulatory scheme in the horseracing industry, Mot. 4, is unavailing. Litigants in those cases have raised similar Appointments Clause challenges as Alpine raises here, but every court of appeals to have considered those claims has rejected them as inconsistent with "the Supreme Court's governing framework." *See National Horsemen's Benevolent & Protective Assoc.*, 107 F.4th at 438-39; *Walmsley v. FTC*, 117 F.4th 1032, 1041 (8th Cir. 2024).

Alpine notes that the federal government has filed a petition for certiorari asking the Supreme Court to review a decision from the Fifth

15

Circuit addressing the horseracing scheme.  *See* Mot. 4 (citing *FTC v. Nat'l Horsemen's Benevolent & Protective Ass'n*, No. 24-429 (U.S. Oct. 16, 2024)).  The federal government has asked the Supreme Court to review the Fifth Circuit's conclusion that the enforcement provisions of the horseracing statute violate the private-nondelegation doctrine.  *See FTC v. Nat'l Horsemen's Benevolent & Protective Ass'n*, No. 24-429 (U.S. Oct. 16, 2024).  But Alpine does not intend to seek certiorari on the question whether FINRA's structure violates the private non-delegation doctrine, and, in any event, the Fifth Circuit itself recognized that the SEC-FINRA scheme is distinguishable in relevant respects from the horseracing statute.  *See* 107 F.4th at 434.  Thus, while there is a conflict amongst the Circuits on whether the horseracing statute's enforcement provisions violate the private-nondelegation doctrine, that split does not implicate the SEC-FINRA scheme.

**B.**  Alpine has also not established irreparable harm or that the balance of equities weighs in favor of the relief that it seeks.  As discussed above, this Court directed the district court to *grant* Alpine preliminary relief that it had previously denied.  In asking the Court to stay the issuance of the mandate, Alpine appears to be requesting that

16

this Court prolong the emergency injunction pending appeal issued by the motions panel, which prevented FINRA's proceedings from going forward at all. Even assuming a stay of the mandate would result in that relief, Alpine has not made the requisite showing for that extraordinary relief. The limited preliminary injunction directed by this Court ensure that Alpine will not face the threat of expulsion from FINRA and being forced to "shutter" before the SEC has an opportunity to review that decision on the merits. Opening Br. 3. For the reasons set forth in this Court's decision and discussed above, Alpine has not established irreparable harm warranting a broader injunction that would short-circuit further self-regulatory proceedings and the SEC's review of those proceedings.

## CONCLUSION

For the foregoing reasons, the Court should deny Alpine's motion to stay the mandate.

Respectfully submitted,

MICHAEL D. GRANSTON
*Deputy Assistant Attorney General**

MARK B. STERN
GERARD SINZDAK
*/s/ Courtney L. Dixon*
COURTNEY L. DIXON
CAROLINE TAN
*Attorneys, Appellate Staff*
*Civil Division, Room 7246*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-8189*
*courtney.l.dixon@usdoj.gov*

January 2025

---

* The Acting Assistant Attorney General is recused in this matter.

18

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,197 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Courtney L. Dixon*
COURTNEY L. DIXON

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Courtney L. Dixon*
Courtney L. Dixon