ORAL ARGUMENT HELD ON FEBRUARY 8, 2024
No. 23-5129

# In The United States Court Of Appeals For The District Of Columbia Circuit

---

ALPINE SECURITIES CORPORATION,
*Plaintiff-Appellant*,

SCOTTSDALE CAPITAL ADVISORS CORPORATION
*Plaintiff*,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,
*Defendant-Appellee*,

UNITED STATES OF AMERICA,
*Intervenor for Defendant-Appellee*.

---

**PLAINTIFF-APPELLANT ALPINE'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY ISSUANCE OF THE MANDATE PENDING THE DISPOSITION OF A PETITION FOR WRIT OF CERTIORARI**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA No. 1:23-cv-1506-BAH

---

Kenneth G. Turkel
David A. Hayes
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, FL 33602
Phone: (813) 834-9191
kturkel@tcb-law.com

Maranda E. Fritz
Maranda E. Fritz PC
521 Fifth Avenue 17th Floor
New York, New York 10175
Phone: (646) 584-8231
maranda@fritzpc.com

David H. Thompson
Brian W. Barnes
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
Telephone: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Counsel for Plaintiff-Appellant Alpine Securities Corporation*

## TABLE OF CONTENTS

<u>**Page**</u>

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT ............................................................................................................1

CONCLUSION .......................................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page**

*Clinton v. City of New York*,
   524 U.S. 417 (1998)..................................................................................6

*Fed. Communications Comm'n v. Consumers' Research*,
   No. 24-354 (cert. granted Nov. 22, 2024) .......................................................4

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010)..................................................................................6

*Hemphill v. New York*,
   595 U.S. 140, 149 (2022) ..........................................................................8

*Loma Linda-Inland Consortium for Healthcare Educ. v. Nat'l Lab. Rels. Bd.*,
   No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023)..........................10

*Morrison v. Olson*,
   487 U.S. 654 (1988)..................................................................................6

*Nara v. Frank*,
   494 F.3d 1132 (3d Cir. 2007) ....................................................................2

*United States v. Microsoft Corp.*,
   No. 00-5212, 2001 WL 931170 (D.C. Cir. Aug. 17, 2001) .........................2

*Zivotofsky v. Kerry*,
   576 U.S. 1 (2015)......................................................................................6

**Other Authorities**

Br. in Opp'n, *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, No. 24-156, 2024
   WL 4817360, at *16 (U.S. Nov. 14, 2024) ..................................................7

# GLOSSARY OF ABBREVIATIONS

<u>FINRA</u>: Financial Industry Regulation Authority

<u>SEC</u>: Securities and Exchange Commission

# ARGUMENT

When FINRA sought this Court's en banc review at the motions-panel stage, FINRA said this case would "upend the centuries-old self-regulatory framework" and would have "far-reaching real-world implications." FINRA Pet'n for Reh'g, Doc. 2010871 (Aug. 3, 2023), at 5–6. Now that Alpine seeks a temporary, discrete stay of this Court's panel-opinion mandate so that Alpine's constitutional injury will not be mooted while its petition is considered, FINRA says this case is "is not "certworthy" because it is "narrow," "limited," and "preliminary." FINRA Opp'n to Stay of Mandate, Doc. 2096505 (Jan. 27, 2025), at 7 ("FINRA Br.").

In truth, Alpine has identified several substantial questions that will warrant the Supreme Court's attention and that present issues underlying one *already-granted* and other currently pending private non-delegation petitions before the Court, and good cause exists for a stay.

As an initial matter, FINRA and the Government seek to hold Alpine to a different standard than the one established by this Circuit's rules and precedent for this Court's stay of its own mandate. They rely on out-of-Circuit precedent and the Supreme Court's standard for *its* issuance of a stay of another Court's mandate pending certiorari review. *See* FINRA Br. at 7; Gov't Opp'n to Stay of Mandate, Doc. 2096741 (Jan. 27, 2025), at 10–11 ("Gov't Br.") (asserting that Alpine must show that five Justices would reverse). But Alpine is asking this Court to stay its

1

own mandate, and neither FINRA nor the United States have cited any authority establishing that the higher standard would apply in this context.[1]

Were there any doubt, the sole precedent of *this* Circuit cited by FINRA applies the ordinary standard. *See United States v. Microsoft Corp.*, No. 00-5212, 2001 WL 931170, at *1 (D.C. Cir. Aug. 17, 2001) ("In order to obtain a stay of the mandate pending its petition for certiorari, Microsoft must show that the 'petition would present a substantial question and that there is good cause for a stay.' " (citing Fed. R. App. P. 41(d)(2)(A) and D.C. Cir. Rule 41(a)(2)). Nothing more.

FINRA also seeks to apply a higher standard for relief than the one employed in this Circuit for "good cause," claiming that Alpine must establish the preliminary injunction equitable factors. *See* FINRA Br. at 7 ("And to show 'good cause,' Alpine must establish both 'a likelihood of irreparable injury absent a stay' and that 'the interests of the parties and the public favor a stay.' (quoting *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007)). FINRA cites another Circuit's standard for staying the mandate for this proposition, and even then overstates *that* Circuit's standard, which only considers whether "the interests of the parties and the public favor a stay" in a "close case." *Nara*, 494 F.3d at 1133.

---

[1] Importing the Supreme Court's standard onto this Court would make little sense. The Supreme Court may be situated to determine whether four justices would grant certiorari and whether five justices would reverse, but a lower Court is not particularly well-situated to determine whether it *itself* will be reversed.

Applying the right standard, Alpine has made its required showing. Alpine's request is a modest one. A stay of the mandate will temporarily preserve the status quo while Alpine seeks the Supreme Court's decision on how to handle this case, especially given the Court's recent grant of certiorari over a private non-delegation question and the several other pending private non-delegation petitions.[2] Absent a stay, Alpine will suffer the precise injury that *Axon* recognized as immediate and irreparable in at least one other context, if not all contexts, *i.e.*, being subjected to a proceeding and a decision of a single, improperly appointed FINRA employee. Even if FINRA would have this Court assume that there is *no* chance the Supreme Court may adopt a different interpretation of its own language in *Axon*—*i.e.*, one by which Alpine would suffer an irreparable "here-and-now" injury that applies just as well for establishing injunctive relief—Alpine's injury here goes beyond that. First, although this Court held that being subject to the allegedly unconstitutional hearing did not create a per se irreparable injury for the purpose of establishing injunctive relief—and that is currently the law in this Circuit—this Court did not address the

---

[2] Alpine understands this Court's order dissolving the injunction pending appeal to take effect, like the rest of this Court's order, upon the issuance of the Court's mandate. The Government believes "[i]t is not clear" whether the injunction pending appeal has already been dissolved, Gov't Br. at 10, but does not explain why that particular aspect of the Court's order would have taken immediate effect before the issuance of the mandate. To resolve any alleged ambiguity, Alpine would respectfully request that the Court clarify that the injunction pending appeal remains in effect if it enters an order staying the mandate.

fact that Alpine faces the independent and irreparable harm of losing any chance to bring its Article II claims to the Supreme Court if it is forced to undergo FINRA's Expedited Proceeding before the Supreme Court has a chance to review Alpine's petition. This is no "ordinary litigation burden[]," FINRA Br. at 3, but a substantial threat to highly credible constitutional claims.

    1. Alpine has identified several substantial questions worthy of the Supreme Court's attention. This is the rare case in which we need not speculate about whether the Supreme Court will grant certiorari over questions presented. The Supreme Court has *already* granted certiorari on a central issue to be raised in the petition for which the mandate would be stayed. In *Federal Communications Commission v. Consumers' Research*, No. 24-354 (cert. granted Nov. 22, 2024), the Supreme Court will consider whether the FCC violated the private non-delegation doctrine by delegating certain federal government functions to a purportedly private body. And to make the private non-delegation issue even more pressing, the Supreme Court may further grant review over the private non-delegation cases surrounding the Horseracing Integrity and Safety Authority (HISA), which present an acknowledged Circuit Split.

    FINRA and the United States attempt to side-step the importance of the Supreme Court's grant of certiorari in a private non-delegation case and the agreement among the parties (including the Solicitor General) that the HISA cases

should also be granted by pointing out that the Fifth Circuit distinguished the SEC-FINRA relationship in dicta. But as Alpine has already explained, the Fifth Circuit was not presented with the question whether the SEC-FINRA relationship passes constitutional muster and did not consider the specific practices that FINRA employs. *See* Alpine Reply Br., Doc. 2027722 (Nov. 17, 2023), at 25. After all, this Court's panel opinion—which held that FINRA's self-executing expulsion power violated the private non-delegation doctrine—has already established that the Fifth Circuit was wrong in its fly-by reasoning.

The most FINRA can muster in arguing that the private non-delegation issues pose no substantial legal question is that no court has held that FINRA disciplinary proceedings violate the private nondelegation doctrine where there is an opportunity for SEC review before any expulsion takes effect. *See* FINRA Br. at 13 n.* ("No court has held that FINRA's disciplinary proceedings violate the private nondelegation doctrine where there is an opportunity for SEC review before any expulsion takes effect."). But that makes sense, as up until this Court's panel opinion, FINRA has in fact enjoyed self-executing expulsion power. According to FINRA, Alpine's claims must fail because no court has yet to bless a scenario that, even today, does not yet exist.

The Supreme Court is poised to clarify the contours of how much supervision, and what kind of supervision, the Constitution requires when the Federal

5

Government chooses to delegate power to a private body, assuming it may do so at all. Alpine's claims should be preserved while the Supreme Court provides that guidance, and the Supreme Court should have the opportunity to consider how to handle Alpine's petition in light of its private non-delegation docket.

In addition to the private non-delegation questions at issue in this case, Alpine has also identified related substantial questions of whether FINRA's structure implicates Article II's protections, as well as whether *Axon*'s irreparable injury holding applies in the context of injunctive relief. FINRA and the United States critique both grounds, citing a lack of split among the Circuits and raising various vehicle issues.

Even assuming there is no square conflict among the Courts of Appeals, the Supreme Court has a long-standing practice of granting review over structural Constitutional questions—especially those implicating Article II—even where no Circuit Split has yet developed. *See, e.g.*, *Zivotofsky v. Kerry*, 576 U.S. 1 (2015); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010); *Morrison v. Olson*, 487 U.S. 654 (1988); *Clinton v. City of New York*, 524 U.S. 417 (1998).

The Government contends that the Supreme Court recently denied a petition presenting the same *Axon* question. But as the Solicitor General's Brief in Opposition in that case makes clear, that petition involved several grounds for denial not present here. As the Solicitor General explained, although Petitioner sought

6

review over "whether separation-of-powers violations never cause irreparable harm, . . . . the court of appeals held no such thing." Br. in Opp'n, *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, No. 24-156, 2024 WL 4817360, at *16 (U.S. Nov. 14, 2024). The Court "recognized that separation-of-powers violations *can* cause irreparable harm; [and] merely concluded that petitioner had not established such harm[.]" *Id.* "That holding followed directly from this Court's decision in *Collins v. Yellen*, 594 U.S. 220 (2021)," which does not impact Alpine's claims.

As to Alpine's alleged forfeiture, it is puzzling that FINRA and the Government complain that Alpine's *Axon* argument was only subject to one paragraph of briefing and generally accuse Alpine of forfeiting sub-points—including reference to specific cases—in support of its *Axon* argument. FINRA Br. at 11; Gov't Br. at 11.[3] To be clear, Alpine did not brief the *Axon* issue at great length because no party ever took issue with Alpine's reading of *Axon*'s plain language. Indeed, it was the panel majority of this Court, which—for the first time—made the argument on FINRA's behalf that ultimately resulted in the denial of relief over Alpine's Article II claims. Both for this reason, and because FINRA never raised them, Alpine had no need to address this Circuit's pre-*Axon* cases. Alpine's

---

[3] It blinks reality that *Axon* issue was "not the primary focus of . . . this Court's decision." Gov't Br. at 11. The *Axon* issue was entirely dispositive of Alpine's lead merits claims under Article II, which the Court declined to analyze beyond the *Axon* issue. *Axon* was also critical to the scope of the injunction for Alpine's private non-delegation claims.

7

argument that *Axon*'s language means what it says and applies in the context of injunctive relief went unchallenged, and Alpine did not present extensive arguments in response to what was ultimately the Court's reasoning because it was never given the chance. In any case, no one can dispute that Alpine raised the *Axon* irreparable injury argument and has made it consistently at every single stage of this litigation. "Once a federal claim is properly presented, a party can make any argument in support of that claim." *Hemphill v. New York*, 595 U.S. 140, 149 (2022) (quoting *Yee v. Escondido*, 503 U.S. 519, 534 (1992)). All FINRA does is call attention to its own forfeiture of what turned out to be the dispositive issue for the scope of the Court's injunction as to Alpine's private non-delegation claims and for Alpine's Article II claims entirely.

In sum, the questions surrounding the constitutionality of the enforcement of federal law by a purportedly private body are substantial. The Supreme Court's grant of certiorari this Term confirms as much. So too, the related questions regarding the meaning of *Axon* in the context of injunctive relief and the Article II implications of FINRA's structure are substantial, and the alleged vehicle issues insubstantial.

8

2. Good cause also exists for a stay of this Court's mandate. FINRA and the Government argue that no good cause exists because Alpine will suffer no harm from being subject to the FINRA proceeding, but these arguments fail.

FINRA begins by mischaracterizing Alpine's claims. FINRA is wrong that Alpine only sought not to be expelled before SEC review. That was only one of Alpine's independent injuries. *See, e.g.*, Alpine Opening Br., Doc. 2014466 (Aug. 28, 2023) at 48 ("Absent a preliminary injunction, Alpine will be irreparably harmed by FINRA's sweeping exercise of government authority and disclaimer of all constitutional constraints in several independent ways. Alpine would be subject to (1) an unconstitutional administrative proceeding; (2) administered by an unconstitutional administrative body; (3) that could result in severe, existential harm: immediate expulsion—the securities industry equivalent of capital punishment." (internal quotation marks omitted)).

FINRA and the United States next argue that Alpine will suffer no harm because the panel's majority opinion held that Alpine cannot establish irreparable injury. But this Court held only that the sole fact of having to undergo a hearing is not, by itself, irreparable injury.  This Court did not hold that irreparable injury does not exist by virtue of the fact that Alpine would lose the ability to pursue its constitutional injury if it is forced to undergo the Expedited Proceeding before the Supreme Court can consider Alpine's petition.

9

Finally, FINRA seeks to distinguish Alpine's cases cited for the proposition that being forced to participate in an allegedly unlawful hearing moots the hearing-related injury. It is correct that those cases involved different factual contexts than a FINRA disciplinary proceeding, but FINRA misses the point. These cases are relevant for the broader point that, regardless of the subject matter of a hearing, the harm of participating in a hearing must be remedied *before* the hearing takes place. *See, e.g.*, *Loma Linda-Inland Consortium for Healthcare Educ. v. Nat'l Lab. Rels. Bd.*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023) ("Any harms . . . from the hearing process are over and done with. No injunctive relief could redress them.").

***

The Supreme Court has already granted certiorari this Term to address the private non-delegation doctrine and determine the contours of a purportedly private body's ability to exercise government power, if at all. And the Court may well take the parties—including the United States—up on its offer to further elucidate the doctrine as it applies to HISA, a purportedly private body highly analogous to FINRA. The Supreme Court should have the opportunity to consider this important matter alongside those petitions *before* Alpine is made to face the irreparable harm of which it has complained throughout this litigation and which will moot a core

constitutional injury: being forced to endure an unconstitutional proceeding by an unconstitutional decisionmaker.

## CONCLUSION

This Court should temporarily stay the mandate pending the Supreme Court's disposition of Alpine's petition for certiorari.

Date: February 3, 2025

Kenneth G. Turkel
E-mail: kturkel@tcb-law.com
David A. Hayes
E-mail: dhayes@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street
Suite 1900
Tampa, FL 33602
Phone: (813) 834-9191

Respectfully submitted,

*/s/David H. Thompson*
David H. Thompson
Brian W. Barnes
Athanasia O. Livas
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Phone: (202) 220-9649
dthompson@cooperkirk.com

Maranda E. Fritz
maranda@fritzpc.com
Maranda E. Fritz PC
521 Fifth Avenue 17th Floor
New York, New York 10175
Phone: (646) 584-8231

*Counsel for Plaintiff-Appellant Alpine Securities Corporation*

11

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2) because the motion contains 2,483 words. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Date: February 3, 2025                                             s/David H. Thompson
                                                                                David H. Thompson

                                                                                *Counsel for Plaintiff-Appellant*
                                                                                *Alpine Securities Corporation*

## CERTIFICATE OF SERVICE

I certify that on February 3, 2025, I filed the foregoing document via the appellate CM/ECF system of the United States Court of Appeals for the District of Columbia Circuit. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: February 3, 2025

s/David H. Thompson
David H. Thompson

*Counsel for Plaintiff-Appellant
Alpine Securities Corporation*